943 So.2d 1037 (2006)
HOLLY & SMITH ARCHITECTS, INC.
v.
ST. HELENA CONGREGATE FACILITY, INC. and St. Helena Parish Hospital.
No. 2006-C-0582.
Supreme Court of Louisiana.
November 29, 2006.
*1039 Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Maxwell G. Kees, Sr., Charles L. Patin, Jr., Baton Rouge, Scott M. Perrilloux, District Attorney, Clifton Thomas Speed, Assistant District Attorney, Sullivan, Stolier & Resor, Jack M. Stolier, New Orleans, Matthew K. Brown, for Applicant.
Macaluso & Jordan, Ronald S. Macaluso, for Respondent.
Paul A. Holmes, John A. Gallaher, Baton Rouge, for Amicus Curiae, Louisiana Municipal Association.
Patrick S. Ottinger, Lafayette, for Amicus Curiae, Lafayette City-Parish Police Jury.
John F. Weeks, New Orleans, for Amicus Curiae, Louisiana Sheriff's Association.
Roland J. Dartez, Dannie P. Garrett, III, Baton Rouge, for Amicus Curiae, Louisiana Police Jury Association.
Allen L. Smith, Jr., Lake Charles, for Amicus Curiae, Calcasieu Parish Police Jury.
Gwendolyn K. Brown, Larry D. Book, Baton Rouge, for Amicus Curiae, City of Baton Rouge and the Parish of Baton Rouge.
Tina V. Grant, for Amicus Curiae, State of Louisiana.
TRAYLOR, Justice.
We granted certiorari in this case in order to determine whether a judicial mortgage is effective as to third parties when that judicial mortgage purportedly encumbers the property of a political subdivision of the State. Plaintiff secured three separate judgments against Defendant, and further, Plaintiff filed these judgments in the mortgage records for the applicable parish. Defendant is a political subdivision of the State of Louisiana, and as such, Defendant argues that these recorded *1040 judgments should be erased from the mortgage records. Defendant maintains that a judicial mortgage cannot be effective against the State and/or its political subdivisions because certain constitutional and statutory provisions set forth the method by which these judgments must be paid. Plaintiff, however, suggests that these constitutional and statutory provisions do not proscribe the recordation of judgments against the State and/or its political subdivisions. Defendant argues that Plaintiff is trying to circumvent the constitutional and statutory mandates by securing judicial mortgages affecting potential third party purchasers, thereby prompting the State and/or political subdivisions to pay the judgments in an effort to keep the property unencumbered. For the reasons that follow, we affirm the ruling of the appellate court only as to its result.

FACTS AND PROCEDURAL HISTORY
Plaintiff Holly & Smith Architects, Inc. ("Holly & Smith") obtained three judgments against Defendants St. Helena Congregate Facility, Inc. and St. Helena Parish Hospital Service District No. 1 ("St. Helena Hospital"),[1] and each of these judgments was recorded in the mortgage records for St. Helena Parish.[2] Holly & Smith filed a motion to examine judgment debtor on June 10, 2004; however, on August 3, 2004, St. Helena Hospital filed a petition for writ of mandamus in hopes of securing an order directing the St. Helena Parish Clerk of Court to erase said judgments from the mortgage records. Further, St. Helena Hospital sought a declaration that the recorded judgments did not create liens and/or encumbrances against its property. Also on August 3, 2004, St. Helena Hospital filed a motion to quash or for protective order (with respect to Holly & Smith's intention to conduct a judgment debtor examination). Holly & Smith filed its petition for writ of mandamus on August 16, 2004, as Holly & Smith sought to have St. Helena Hospital immediately pay the three prior-recorded judgments. On August 18, 2004, Holly & Smith moved to have the above-mentioned actions consolidated. A hearing was conducted regarding these matters on September 3, 2004.
On September 3, 2004, the trial court allowed the consolidation of the above-referenced actions. The trial court granted St. Helena Hospital's motion to quash or for protective order regarding the judgment debtor examination, and the trial court denied Holly & Smith's petition for writ of mandamus. Further, the trial court denied St. Helena Hospital's petition for writ of mandamus. The trial court stated:
However, what I'm saying is is that I think you've got a right to record your judgment. As I appreciate it, the recordation of a judgment in the conveyance records constitutes a judicial mortgage or lien  whatever you want to call it. Beyond that, which is the execution part, I don't think the plaintiff can do. I don't think he can do that. So if you're asking me what does that mean, yes, I think it means there is a judicial mortgage on all of the property which cannot be executed upon. What effect does it have when it goes to third parties, as I appreciate that's the testimony here, I think it probably goes with the property, and it's something that's got to be dealt with. And I *1041 think that that is the  perhaps one area that the Legislature left open for possible collection or execution of judgments. (Emphasis added).
The trial court signed this judgment on October 29, 2004, and St. Helena Hospital appealed this decision to the First Circuit Court of Appeal.
On February 10, 2006, the First Circuit Court of Appeal majority affirmed the trial court's decision. In its opinion, the appellate court found:
Article XII, § 10 and LSA-R.S. 13:5109 B provide a method by which judgments rendered against the state or its political subdivisions may be paid. Foreman v. Vermilion Parish Police Jury, 336 So.2d 986, 989 (La.App. 3 Cir.), writ refused, 339 So.2d 846 (La.1976). Although the judgment against St. Helena Hospital is not exigible and payable without St. Helena Hospital first appropriating the funds, neither the constitution nor the statutory scheme prohibits the filing in the mortgage records of a judgment against a hospital service district such as St. Helena Hospital. Nor does the constitution or the statutory scheme entitle St. Helena Hospital to a declaration that the judicial mortgages on its property are without effect on third party purchasers.[3] (Emphasis added).
From this decision, Judge Downing dissented and assigned reasons. Judge Downing stated:
"It is an axiom of the law that no one can do indirectly what he cannot do directly." Central Louisiana Elec. Co. v. Louisiana Public Service Commission, 253 La. 553, 563, 218 So.2d 592, 596 (La.1969). The majority's ruling allows a plaintiff to indirectly make judgments against the State's political subdivisions exigible and payable without the political subdivision first appropriating the funds. Here, the St. Helena Congregate Facility, Inc., and St. Helena Parish Hospital are undisputedly political subdivisions of the State. And to accomplish the sale of their immovable property, they will be forced to either pay the judgment liens or accept a price reduced to account for the value of the liens. Either way, while a seizure and sale of public property is not technically ordered here, the political subdivision effectively is required to pay off the liens. As such, the majority authorizes violation of La. Const. art. XII, § 10 C and La. R.S. 13:5109 B(2). This is beyond our authority.[4]
St. Helena Hospital sought supervisory writs with this Court, and its writ application was granted on May 26, 2006.[5]

LAW AND DISCUSSION
St. Helena Hospital avers that LA.CONST. art. XII, § 10(C) provides the exclusive method for the payment of judgments rendered against the State and/or its political subdivisions. LA. CONST. art. XII, § 10 states:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit *1042 shall waive immunity from suit and liability.
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered. (Emphasis added).
Further, St. Helena Hospital points out that the above-referenced constitutional provision is reiterated within LA.REV.STAT. § 13:5109(B)(2). LA.REV.STAT. § 13:5109(B)(2) provides:
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision. (Emphasis added).
St. Helena Hospital asserts that the above-referenced legislation is clear and unambiguous. Accordingly, St. Helena Hospital argues that the lower courts erred in failing to recognize that judicial mortgages cannot be maintained against political subdivisions of the State. St. Helena Hospital suggests that the lower courts erroneously applied the general provisions of LA. CIV.CODE art. 3307, specifically LA. CIV.CODE art. 3307(2), while St. Helena Hospital maintains that the lower courts overlooked the specific mandates of LA. CONST. art. XII, § 10(C) and LA.REV. STAT. § 13:5109(B)(2). LA. CIV.CODE art. 3307 provides:
A mortgage has the following effects:
(1) Upon failure of the obligor to perform the obligation secured by the mortgage, the mortgagee may cause the mortgaged property to be seized and sold in the manner provided by law and have the proceeds applied toward the satisfaction of the obligation.
(2) The mortgaged property may not be transferred or encumbered to the prejudice of the mortgage.

(3) The mortgagee is preferred to the unsecured creditors of the mortgagor and to others whose rights become effective after the mortgage becomes effective as to them. (Emphasis added).
St. Helena Hospital contends that the specific legislation overrides the more general legislation, and as such, St. Helena Hospital argues that the constitutional and statutory mandates prevent an interpretation of LA. CIV.CODE art. 3307(2) which would, for all intents and purposes, allow a third party purchaser to pay a judgment rendered against the State and/or its political subdivisions. Consequently, St. Helena Hospital asserts that public policy considerations must be taken into account. *1043 St. Helena Hospital argues that the sustenance of judicial mortgages on the property of political subdivisions would have a chilling effect on the sales potential of said governmental property, and thus, St. Helena Hospital suggests that there would be an adverse affect on commerce.
In support of its assertions, St. Helena Hospital refers to the Fourth Circuit Court of Appeal's decision in Housing Authority of New Orleans v. Charbonnet, 00-1548 (La.App. 4 Cir. 11/28/01); 802 So.2d 956. In that case, certain money judgments against the Housing Authority of New Orleans ("HANO") were recorded in the Orleans Parish mortgage office. The legislation pertaining to housing authorities had been amended prior to the recordation of these money judgments, and as such, the amended legislation contained no provision that prohibited the filing/recordation of money judgments rendered against housing authorities.[6] The Fourth Circuit affirmed the trial court's decision to grant HANO's petition for writ of mandamus directing that the judgments against HANO "be erased from the mortgage records. . . ."[7] The Fourth Circuit referred to LA. CONST. art. XII, § 10(C) and LA.REV.STAT. § 13:5109(B)(2) in its decision, and ultimately, the appellate court concluded:
. . . [W]e find that the judicial act of recording appellants' money judgments, which create judicial mortgages over HANO's property, will detrimentally impact the legislature's attempt toward privatizing public housing. Also worth noting is the fact that appellants' judgments against HANO are effective even without being recorded in the mortgage office.[8]
Holly & Smith argues that the Fourth Circuit's opinion in Charbonnet is inapplicable to the case at hand. Holly & Smith suggests that the Charbonnet opinion dealt with amended legislation that did not change the prior-existing law regarding the impermissibility of judicial mortgages vis-á-vis housing authorities. Furthermore, Holly & Smith maintains that, in the instant matter, the lower courts did not authorize the method of payment for these recorded judgments, in derogation of constitutional and statutory provisions, but rather, Holly & Smith contends that the lower courts permissibly allowed the mere recordation of these judgments. In other words, Holly & Smith maintains that "recordation" does not equal "method of payment." Holly & Smith points out that LA. CONST. art. XII, § 10(C) and LA.REV.STAT. § 13:5109(B)(2) do not specifically prohibit the recordation of judgments against political subdivisions in the mortgage records.
In support of the contention that the recordation of the three judgments against St. Helena Hospital is permissible, Holly & Smith refers to several statutes that specifically prohibit the creation of charges and/or liens on the properties of certain political bodies when judgments are rendered against same. For instance, with respect to the New Orleans Redevelopment Authority,[9] LA.REV.STAT. § 33:4720.64(A) provides:

All property of the authority, including funds owned or held by it for the purpose of this Chapter, shall be exempt *1044 from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall judgment against the authority be a charge or lien upon such property ; but the provisions of this Section shall not apply to or limit the right of obligees to pursue any remedies for the enforcement of any pledge or lien given pursuant to this Chapter by the authority on its rents, fees, grants, or revenues from community improvement projects; further, the provisions of this Section shall not apply to or limit the right of an obligee to foreclose or otherwise enforce the terms and provisions of any mortgage, note, or other security given by the authority in connection with any immovable property owned by it. (Emphasis added).
Further, regarding New Community Development Corporations,[10] LA.REV.STAT. § 33:7621(A) provides:

All property of a corporation, including funds owned or held by it for the purposes of this chapter, shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall judgment against the corporation be a charge or lien upon such property; but the provisions of this section shall not apply to or limit the right of obligees or guarantors to pursue any remedies for the enforcement of any pledge or lien given pursuant to this chapter by a corporation on its real or personal property, rents, fees, grants or revenues for a new community development project. (Emphasis added).
Holly & Smith avers that the statutes pertaining to hospital service districts, i.e., LA.REV.STAT. §§ 33:7701-7708, contain no provisions that explicitly prohibit the creation of judicial mortgages upon the property of said hospital service districts; therefore, Holly & Smith suggests that the recordation of judgments rendered against hospital service districts is permissible. Holly & Smith points out that the Legislature has enacted statutes pertaining to other political bodies, i.e., New Orleans Redevelopment Authority and New Community Development Corporations, in order to explicitly prohibit the creation of judicial mortgages on their respective properties, and as such, the Legislature could, if it chose to do so, explicitly prohibit the creation of judicial mortgages on the properties of hospital service districts. With no such explicit prohibition, Holly & Smith maintains that the recordation of judgments against St. Helena Hospital is permissible.
Additionally, Holly & Smith maintains that St. Helena Hospital waived any right it might have had to prevent the creation of judicial mortgages on its property, as well as waiving any right to prevent the recordation of judgments rendered against it, when it signed the architectural contract with Holly & Smith. According to Holly & Smith, the architectural contract contained no language that limited Holly & Smith's ability to secure judicial mortgages on the property of St. Helena Hospital. Moreover, Holly & Smith argues that St. Helena Hospital should be equitably estopped from having the recorded judgments erased from the mortgage records.
It is not necessary for us to delve into the details of the architectural contract between St. Helena Hospital and Holly & Smith, nor is it necessary for us to address Holly & Smith's assertion of "equitable estoppel." In order to resolve the question of whether judicial mortgages can *1045 be established on the property of the State and/or its political subdivisions, we need to look at our primary source of law  the legislation. When we are called upon to review legislative provisions, this Court follows certain guidelines, as we did in Louisiana Municipal Association v. State, 04-0227 (La.1/19/05); 893 So.2d 809. In Louisiana Municipal Association, this Court recognized:
Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. After our review, we "render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state."
"Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature's intent." The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.
The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. "Under our long-standing rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter."
A statute must be "applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it." In addition, "courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided."[11]
The language incorporated within LA. CONST. art. XII, § 10(C) and LA.REV.STAT. § 13:5109(B)(2) is both clear and unambiguous. LA. CONST. art. XII, § 10(C) provides, in pertinent part:

No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered. (Emphasis added).
LA.REV.STAT. § 13:5109(B)(2) provides:
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision. (Emphasis added).
From the plain language of the constitutional and statutory provisions, there are no prohibitions against recording in the mortgage records those judgments rendered *1046 against political subdivisions; however, the constitutional and statutory provisions are very clear with respect to the method by which judgments against the State and/or its political subdivisions are paid.
Because the recordation of judgments against the State and/or its political subdivisions is not constitutionally or statutorily prohibited, the question then becomes  are judicial mortgages created when these judgments against the State and/or its political subdivisions are filed in the applicable mortgage records? To determine whether judicial mortgages are created in the aforementioned scenario, we must once again look to our primary source of law. LA. CIV.CODE art. 3278 provides:
Mortgage is a nonpossessory right created over property to secure the performance of an obligation. (Emphasis added).
Further, LA. CIV.CODE art. 3281 provides:
Mortgage may be established only as authorized by legislation. (Emphasis added).
Thus, the establishment of judicial mortgages is stricti juris, and accordingly, we must strictly adhere to the definition of "judicial mortgage" provided by LA. CIV. CODE arts. 3299 and 3300.
LA. CIV.CODE art. 3299 states:

A judicial mortgage secures a judgment for the payment of money. A legal mortgage secures an obligation specified by the law that provides for the mortgage. (Emphasis added).
Meanwhile, LA. CIV.CODE art. 3300 provides:
A judicial mortgage is created by filing a judgment with the recorder of mortgages.
Thus, LA. CIV.CODE art. 3300 provides for the creation of the judicial mortgage, while LA. CIV.CODE art. 3299 defines the judicial mortgage. Because "[a] judicial mortgage secures a judgment for the payment of money," it stands to reason that a judicial mortgage would not exist if the recorded judgment could not secure payment of same. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY states that the verb "secure" means "to put beyond hazard of losing or of not receiving: guarantee."[12] Because LA. CONST. art. XII, § 10(C) and LA.REV.STAT. § 13:5109(B)(2) are very clear regarding the method of payment for judgments rendered against the State and its political subdivisions,[13] it is evident that the recordation of judgments against the State and/or its political subdivisions cannot secure the payment of same. While the recordation of a judgment is permissible, its recordation does not create a security device. Accordingly, we hold that the recordation of judgments rendered against the State and/or its political subdivisions does not create judicial mortgages on the property of the State and/or its political subdivisions.

CONCLUSION
Although St. Helena Hospital has requested that the three judgments rendered against it, and recorded in the St. Helena Parish mortgage records, be erased from said mortgage records, we find the erasure of their inscription from *1047 the mortgage records is unnecessary. The judgments may be recorded, and may remain in the mortgage records, although these recorded judgments do not serve to secure the payment of same. While we find that the lower courts erred in their respective determinations that these recorded judgments were, in fact, judicial mortgages, the lower courts arrived at the correct result in this case. Accordingly, for the foregoing reasons, the judgment of the appellate court is affirmed as to its result only.
AFFIRMED AS TO RESULT ONLY.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., additionally concurs and assigns reasons.
KNOLL, J., dissents for reasons assigned by CALOGERO, C.J.
CALOGERO, Chief Justice, dissents and assigns reasons.
The majority in this case tell us that the erasure of inscription from the mortgage records is unnecessary, then finds that the judgments do not serve to secure payment of the debt evidenced by the judgment. Further, the majority finds that the lower courts in these cases erred in determining that the inscriptions (i.e., the recorded judgments) were in fact judicial mortgages, but nevertheless concludes that the courts below arrived at the "correct result in this case." If the lower courts did err, presumably because the majority here is finding that the recorded judgment cannot constitute judicial mortgages because the plaintiffs cannot by law secure the performance of the obligations, that is, the payment of debt, and if inscription on the mortgage records is unnecessary, any purpose served by allowing the recordation of judgments in the mortgage records will be greatly outweighed by the confusion that results because title examiners may see the inscription as a bar to clear title. Thus, I would order cancellation of the recordation of these three judgments from the mortgage records.
JOHNSON, Justice additionally concurs and assigns reasons.
To avoid confusion, I would order cancellation of the recordation of these three judgments from the mortgage records of St. Helena Parish.
Since we have determined that the recordation cannot create a judicial mortgage against the State or any of its political subdivision, in my mind, the recordation itself is impermissible.
NOTES
[1] In this litigation, it is not disputed that Defendants are political subdivisions of the State of Louisiana. See generally LA.REV.STAT. § 46:1051.
[2] The three recorded judgments were rendered on January 9, 1998, March 11, 2002, and May 16, 2002, respectively.
[3] Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 05-0175, p. 6 (La.App. 1 Cir. 2/10/06); 928 So.2d 615, 618.
[4] Id. at 618.
[5] Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582 (La.5/26/06); 930 So.2d 6.
[6] The legislation in effect prior to the amendment did specifically prohibit judicial mortgages on HANO property.
[7] Housing Authority of New Orleans v. Charbonnet, 00-1548 (La.App. 4 Cir. 11/28/01); 802 So.2d 956, 959.
[8] Housing Authority of New Orleans v. Charbonnet, 00-1548 (La.App. 4 Cir. 11/28/01); 802 So.2d 956, 959.
[9] See LA.REV.STAT. § 33:4720.55.
[10] See LA.REV.STAT. § 33:7604.
[11] Louisiana Municipal Association v. State, 04-0227, pp. 35-36 (La.1/19/05); 893 So.2d 809, 836-837 (citations omitted)(footnote omitted).
[12] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2053 (4th ed. 1976)(emphasis added).
[13] Payment is made "only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision." LA.REV.STAT. § 13:5109(B)(2)(emphasis added).