WEIMER, Justice.
|,The issue in this matter is whether a sheriff acted within statutory authority in deducting a commission in connection with the collection of a two-millage assessment that was initially approved by voters in 2003. The resolution of this issue requires inquiry into the differences in the manner in which sheriffs’ offices were funded prior to and after the passage of 1976 La. Acts 689. Harmonizing and reconciling the various provisions of the legislation in question, we conclude that the change in the method of funding eliminated the prior percentage commission-based funding of the sheriffs office from ad valorem taxes under former La. R.S. 33:1423(B) and (C) and replaced it with revenue generated by the newly-created special taxing districts known as law enforcement districts. Thus, sheriffs[1] are no longer authorized to deduct a commission on ad valorem taxes collected by them on behalf of other taxing authorities, as the costs associated with the collection of those |2taxes is now satisfied by the millage levied by the law enforcement districts. For the reasons that follow, the decision of the court of appeal is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.
FACTUAL AND PROCEDURAL HISTORY
In 2003, the Livingston Parish Council on Aging (Council), a non-profit corporation serving the needs of the elderly in Livingston Parish, adopted a resolution authorizing an election to establish a two-millage property tax for a 10-year period. These taxes were to be used by the Council to pay the costs of programs for the elderly. The millage proposition was passed by a majority vote of the parish’s electorate. In 2004, the Sheriff of Livingston Parish (Sheriff) began collecting the property tax on the Council’s behalf, deducting a commission equal to 12 percent of the ad valorem taxes collected.
In 2010, the Council filed a petition for declaratory judgment against the Sheriff, seeking a judgment declaring the Sheriffs deduction of a commission from the property tax collected on the Council’s behalf to be improper and ordering the Sheriff to remit the commissions that had been withheld by him. Finding the Sheriffs deduction of a commission to be improper, the trial court ordered all commissions or fees collected by the Sheriff since December 2004 in connection with the Council’s two-millage assessment be returned to the Council. The court further prohibited the Sheriff from deducting or collecting commissions or fees on future millage assessments to which the Council is entitled.
After reviewing the statutory provisions related to the financing of the office of the sheriff and the sheriffs general fund,[2] the *685 appellate court reversed the trial | acourt’s judgment. Livingston Parish Council on Aging v. Willie Graves, Sheriff of Livingston Parish, 11-0787 (La.App. 1 Cir. 12/21/11) (unpublished). The reversal was based on a finding that former La. R.S. 33:9008 (now La. R.S. 13:5903) is inapplicable to the Council’s assessment that was approved by the voters after the Sheriffs initial millage was fixed in 1977. Accordingly, the appellate court found that the Sheriff was acting within the authority vested in him by former La. R.S. 33:1423(0 (now La. R.S. 13:5523(0) m deducting a commission from the ad valo-rem taxes imposed for the Council’s benefit beginning in 2004.
The Council’s writ application to this court was granted for consideration of whether the Sheriff had acted within his statutory authority in deducting a commission fee in connection with the Council’s two-millage assessment. See Livingston Parish Council on Aging v. Willie Graves, Sheriff of Livingston Parish, 12-0232 (La.4/20/12), 85 So.3d 1279.
DISCUSSION
In 1976, legislation was passed that modified the method in which the office of the sheriff was funded. See 1976 La. Acts, 689 (Act 689). That legislation amended former La. R.S. 33:1421 and 1423 (now La. R.S. 13:5521 and 5523 respectively)[3] and added former La. R.S. 33:9001 through 9008 (now La. R.S. 13:5901 through 5911).
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Red Stick Studio Development, L.L.C. v. State ex rel. Dept, of Economic Development, 10-0193 (La.1/19/11), 56 So.3d 181, 187-88, quoting M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La.7/1/08), 998 So.2d 16, 27. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Id. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent, as well as the reason or reasons which prompted the legislature to enact the law. See Id.
The starting point in the interpretation of any statute is the language of the statute itself. Fontenot v. Reddell Vidrine Water Dist., 02-0439 (La.1/14/03), 836 So.2d 14, 20. Words and phrases shall be read in their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. Id. When the wording of a section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4. Unless otherwise specifically provided therein, all laws or parts of laws in conflict with a provision of a law subsequently enacted by the legislature are repealed by the law subsequently enacted. La. R.S. 24:176(A).
When the meaning of a statute cannot be ascertained by the application of the provisions of La. R.S. 1:3, et seq., the court shall consider the intent of the legislature as best evidenced by the text of a law. See La. R.S. 24:177(A) and (B)(1). The occasion and necessity for the law, the circumstances under which it was enacted, concepts of reasonableness, and eontempo- *686 raneous legislative history may also be considered in determining legislative intent. La. R.S. 24:177(B)(2)(a). The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those articles or statutes, and where the new article or statute is worded differently from the | ¡¡preceding law, the legislature is presumed to have intended to change the law. La. R.S. 24:177(C).
To fully understand the impact of the 1976 legislation on the funding of sheriffs’ offices, we examine the applicable laws in this area as they existed prior to and after the 1976 changes.[4] At the time the legislature considered the proposed legislation, sheriffs’ offices were funded based on the number of state representatives serving a parish (the representative allowance) and by commissions deducted on taxes collected on behalf of taxing authorities as provided in La. R.S. 33:1423. After the enactment of subsection E in 1966, La. R.S. 33:1423 provided:[5]
A.All fees in civil, criminal and other matters allowed by law for the performance of any duty of the sheriff and ex-officio tax collector shall include not less than $1000.00 per annum. In parishes having more than two representatives in the Legislature, the sheriff shall receive $500.00 for each additional representative. These sums shall be deducted by the sheriff pro rata from the amounts due the recipients of taxes in addition to the percentages hereinafter provided for, before settlement with them, and shall be collected by him, and deposited by him in a special account, to be accounted for by the sheriff under the head of “Sheriff s salary fund.”[6]
B. The tax collector shall deduct a commission which he is to turn over to the sheriffs salary fund from the following: all state, parish, school, levee, and other taxes and licenses, including all special taxes except the confederate veterans tax, including hunting and fishing licenses collected by him and actually paid by him into the state and parish treasury or the authority designated by law to receive same.
C. In the following parishes, the tax collectors shall deduct as commissions not more than the following percentages of the aggregate amount of such taxes shown to be collectible by the tax rolls:
[[Image here]]
| (j(32) Livingston . Twelve per cent[7]
[[Image here]]
D. The sheriff and ex-officio tax collector shall draw his salary monthly on his own check or warrant and shall monthly issue to employees and deputies, checks or warrants for the amount due them, which shall be drawn against *687 and paid out of the sheriffs salary fund. For claims within the allowance above fixed, and to be charged to the allowance, he shall issue his own checks or warrants, which shall be drawn against and paid out of the sheriffs salary fund. The special account representing the sheriffs salary fund shall show the total receipts of the office of the sheriff and ex-officio tax collector in civil and criminal matters and other fees, allowances, charges and commissions, and the disbursement to the sheriff and ex-officio tax collector, including the salary and all other expenses of the office, and also including the reimbursement of actual expenses paid out as hereinafter allowed. In any case where the sheriff can, with reasonable certainty, estimate what will be the amount of the sheriffs salary fund, as herein provided, he may, at his discretion, anticipate not exceeding seventy-five per cent of the same, exclusive of interest, according to the needs of his office and may negotiate his own warrants against the fund from month to month. In that case, the warrants and the interest thereon shall be paid from the sheriffs salary and expense fund as the money accrues therein in the order of issuance of the warrants. The fund is pledged for the payment of any warrant issued under the authority of this proviso, but the warrants shall not exceed the salary and allowance provided above.
E. The percentage allocations set forth in Paragraph C of this section shall not be changed by amendment to this section, or by other act regardless of whether it amends this section, unless notice of intent to do so shall have been sent by the sheriff to the school board and governing authority in each parish to be affected by such change. Such notice in each parish affected shall state the percentage change to be applied for and shall be sent by certified mail.
The mailing of this notice of intent to change percentage allocations in paragraph C of this section shall be made by the sheriff at least ten days prior to the convening of the legislative session in which such change is to be made. The evidence of such notice having been mailed shall be exhibited in the legislature before such act shall be passed, and every such act shall contain a recital that such notice has been given.
17Thus, when the legislature began considering possible changes to the method sheriffs’ offices were being funded, the services for sheriffs’ offices were paid by the “representative allowance” provided for in La. R.S. 33:1423(A) and by the percentage commission as set forth in La. R.S. 33:1423(C) relative to collection of the taxes and licenses referenced in La. R.S. 33:1423(B). Payment of the representative allowance and commissions by taxing authorities enabled sheriffs to pay the expenses related to the services provided. See La. R.S. 33:1423(D). If, as can be expected, there were fluctuations in taxes collected for the various taxing authorities, the revenue generated by sheriffs’ offices in terms of commissions from collected taxes varied from year to year. See La. R.S. 33:1423(B) and (C).
In 1969,[8] the legislature amended the list of taxes and licenses set forth in La. R.S. 33:1423(B), deleting the reference to “special taxes,” and added a second paragraph to provide for the collection of sales taxes by the sheriffs in Jefferson and St. Bernard Parishes. As amended, La. R.S. 33:1423(B) provided:
The tax collector shall deduct a commission which he is to turn over to the *688 Sheriffs Salary Fund from the following: all state, parish, school, levee and other taxes and licenses, including hunting and fishing licenses collected by him and actually paid by him to the state and parish treasury or the authority designated by law to receive same.
In addition, the sheriff of the parish of Jefferson shall collect any sales tax levied by the Jefferson Parish School Board for which collection he shall receive as compensation the percentage specified in Subsection C of this Section, and the sheriff of the parish of St. Bernard shall collect all sales taxes levied by the St. Bernard Parish Police Jury and/or the St. Bernard Parish School Board, for which collection he shall receive as compensation the percentage specified in Subsection C hereof.
This amendment clearly shows the historical interplay between subsections B and C of La. R.S. 38:1428.
|sFor the purpose of calculating the deductions authorized by subsection B from “all state, parish, school, levee and other taxes and licenses, including hunting and fishing licenses,” a sheriff would use the percentage specified for his parish in subsection C. Parish ad valorem taxes were just one of the many categories of taxes to which the percentages set forth in subsection C applied.
The funds derived pursuant to La. R.S. 33:1423(A), (B), and (C) were placed into the sheriffs salary fund and expended in accordance with La. R.S. 33:1423(D). When the funds from those sources were insufficient to meet the needs of a sheriffs office, the sheriff would seek to have the legislature increase the percentage rate set forth in La. R.S. 33:1423(0) relative to the sheriffs parish. As a result, the legislature was bombarded with legislation regarding the percentage rates set forth in La. R.S. 33:1423(0), which placed the legislature in the position of acting as a mediator of rate disputes between the sheriff and the taxing authorities.[9]
To eliminate the repeated requests for percentage rate increases and to bring more stability to the sheriffs funding, the legislature in 1976 provided for the creation of special law enforcement districts by enacting La. R.S. 33:9001 through 9008. See 1976 La. Acts 689, § 1. The expressed purpose for the creation of such districts was for financing the office of the sheriff. La. R.S. 33:9001. To accomplish that purpose, each law enforcement district was given the authority to tax within the limits of La. R.S. 33:9001 through 9008. See La. R.S. 33:9002. The method of taxation was provided for in La. R.S. 33:9003, which read:
|flEach district hereby created shall levy a tax on the assessed valuation of all property appearing on the 1977 and subsequent tax rolls, without a vote of the people, in an amount that will produce for the district in the initial year the same revenue as that estimated to be produced by the sheriffs commission on ad valorem taxes for the Fiscal Year 1976-1977. The amount of millage to be assessed shall be certified by the legislative auditor and this millage adopted shall remain in effect in subsequent years unless changed as provided by *689 law. The sheriffs shall provide such information to the legislative auditor as he shall require to fulfill the duties imposed upon him by this section.
In addition to the taxes authorized herein the district or a subdistrict created by the district may impose additional millages in any district or subdistrict when approved by a majority of the electors voting thereon in an election held for that purpose. This election may be called by the sheriff and ex officio executive officer of the district. The cost of the election is to be borne by the sheriffs salary fund unless the election is concurrent with other elections in which event the district or subdistrict will bear a proportionate share of the cost.
Thus, beginning with the 1977 tax year, law enforcement districts were entitled to levy their own ad valorem taxes (without the need for voter approval) for the express purpose of funding sheriffs’ offices. See La. R.S. 33:9003.
The initial levy would be equal to “an amount that will produce for the district in the initial year the same revenue as that estimated to be produced by the sheriffs commission on ad valorem taxes for the Fiscal Year 1976-1977.” La. R.S. 33:9003. The initial millage to be levied by law enforcement districts had to take into account “the actual cost of collection of taxes for the other tax recipient bodies” such that “[a] pro rata share of the cost of collection shall continue to be paid to the sheriff of the parish by each tax recipient body.” See La. R.S. 33:9004 (1976).[10] The cost-sharing 1 ^provided in La. R.S. 33:9004 (1976) was be accomplished by a mandatory rollback of ad valorem taxes by tax recipient bodies so as not to impose an additional tax burden on payers of ad valo-rem taxes. See La. R.S. 33:9005 (1976).[11]
*690 In connection with the use of the funds from the sheriffs salary fund, a sheriff was required to file an annual budget disclosing his estimated expenditures. See La. R.S. 33:9006 (1976).[12] Placement of and disbursements from funds in the sheriffs salary fund were governed by La. R.S. 33:9007 (1976). The newly enacted statutory scheme concluded with La. R.S. 33:9008 (1976), which addressed the powers of the sheriff and provided:
It is the purpose of this Chapter to create special district for the financing of the sheriffs office. Nothing contained herein shall be interpreted as diminishing any of the authority of the sheriff as delegated to him in the constitution and laws of this state.
|nSince the legislature directed that the sheriffs initial millage be based solely on the sheriffs estimated revenue from “commission[s] on ad valorem taxes for the Fiscal Year 1976-1977,” the Sheriff in this case urges that the levy authorized by La. R.S. 33:9003 served only as compensation for services performed by his office in connection with the ad valorem taxes that were in effect for the 1976-77 fiscal year. As to subsequently levied ad valorem taxes, the Sheriff, citing La. R.S. 33:9008, argues that he is still entitled to deduct a commission pursuant to La. R.S. 33:1423.
The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inci, 06-0582 (La.11/29/06), 943 So.2d 1037, 1045, quoting Louisiana Municipal Association v. State, 04-0227 (La.1/19/05), 893 So.2d 809, 836-37. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the statutes involving the same subject matter. Id. Under our long-standing rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. Id.
In analyzing the Sheriffs argument pertaining to the applicability of La. R.S. 33:9003 to subsequently imposed ad valo-rem taxes, we must examine the corresponding amendments made by Act 689 to La. R.S. 33:1423. In connection with the creation of law enforcement districts for the purpose of financing sheriffs’ offices, the legislature initially proposed a repeal of subsections A, B, and C of La. R.S. 33:1423, which then governed the financing of sheriffs’ offices. See H.B. 1285, 1976 Reg. Sess., original, § 2. Pursuant to amendments by the Louisiana House of Representative Committee on Municipal and Parochial Affairs, the engrossed version of House Bill 1285 envisioned the repeal of only subsections C and E of La. R.S. 11233:1423,[13] with subsections A, B, and D of La. R.S. 33:1423 being amended. The proposed repeal of all or part of La. R.S. 33:1423 was obviously tied to the legislature’s desire to eliminate the sheriffs authority to collect a commission in light of the new method of financing sheriffs’ offices authorized by La. R.S. 33:9001 through 9008.
Pursuant to the proposed amendments, La. R.S. 33:1423(A) and (B) provided:
[A.] All fees in civil, criminal and other matters allowed by law for the performance of any duty of the Sheriff *691 and ex-officio tax collector shall include not less than $1,000.00 per annum. In parishes having more than two representatives in the legislature, the sheriff shall receive $500.00 for each additional ■representative. These sums shall be deducted by the sheriff pro rata from the amounts due the recipients of taxes before a settlement with them, and shall be collected by him, and deposited by him in a special account, to be accounted for by the sheriff under the head of “Sheriff’s salary fund.”
[B.] The tax collector shall deduct a 15 per cent commission which he is to turn over to the sheriffs salary fund from the following: all state taxes and licenses, including hunting- and fishing licenses and parish licenses collected by him and actually paid by him to the state and parish treasury or the authority designated by law to receive same.
In addition, the sheriff of the Parish of Jefferson shall collect all sales tax levied by the Jefferson Parish Council and/or Jefferson Parish School Board, for which collection he shall receive as compensation, 11% of the aggregate amount of sales taxes collected by the sheriff and levied by the Jefferson Parish Council, and 9½% of the aggregate amount of sales taxes collected by the sheriff and levied by the Jefferson Parish School Board. The Sheriff of the Parish of St. Bernard shall collect all sales taxes levied by the St. Bernard Parish Police Jury and/or the St. Bernard Parish School Board, for which collection he shall receive as compensation 12% of the aggregate amount of sales taxes collected by the Sheriff and levied by the St. Bernard Parish Police Jury and/or the St. Bernard Parish School Board Parish School Board.
In connection with the proposed repeal of subsection C, the references in subsections A[14] and B [15] to the percentages specified in subsection C were eliminated | isby the 1976 legislation. Furthermore, to allow for the calculation of the commission deductions authorized by subsection B, specific percentages were inserted into subsection B. Nonetheless, in light of changes proposed on the floor of the Louisiana Senate (Senate) and then by the Legislative Conference Committee, the enrolled version of the bill provided only for the repeal of subsection E and for the amendment and reenactment of subsections A, B, and D of La. R.S. 33:1423. The 1976 legislation left La. R.S. 33:1423(C) intact, without further amendment of subsection B.
By leaving subsection C intact, the Sheriff urges that the legislature did not impact his right to deduct a commission from the ad valorem taxes that were not in effect in the 1976-77 fiscal year and were not part of the formula used in calculating the initial millage tax rate authorized by Act 689. In making this argument, the Sheriff fails to mention the historical interplay between La. R.S. 33:1423(B) and (C), nor did he address the changes made to La. R.S. 33:1423(B), which had previously been the source of the Sheriffs authority to deduct a commission in connection with ad valo-rem taxes collected by him.
Based on its decision not to repeal subsection C as originally proposed, the legislature obviously believed that subsection C was needed to protect the sheriffs right to “collect all fees, charges, commissions and other funds payable to the sheriffs salary fund as provided by law.” See 1976 La. Acts 689, § 6. A review of the changes made to the list of taxes found in La. R.S. 33:1423(B) sheds light on the fees, charges, *692 and commissions referred to in section 6 of Act 689.
In amending subsection B, the legislature substantially reduced the number of taxes formerly listed in subsection B such that subsection B now only authorized the deduction of a commission in connection with “all state taxes and licenses, including | ^hunting and fishing licenses and parish licenses,” all at a rate of 15 percent. Based on its inclusion of specific percentage rates in subsection B, the legislature seemingly eliminated the historical interplay between subsections B and C. Notably missing from the list in subsection B of taxes and licenses from which the sheriff historically could deduct a commission are “all ... parish, school, levee and other taxes” and “all school, levee and other licenses.” Had the legislature repealed subsection C as originally proposed, Act 689 would have taken away the sheriffs authority to deduct a commission in connection with “all ... parish, school, levee and other taxes,” “all school, levee and other licenses,” and any other “taxes [historically] shown to be collectible by the tax rolls,” an effect that the legislature was cautious to guard against. See 1976 La. Acts 689, § 6. By its enactment of La. R.S. 33:9001 through 9008 and amendment of La. R.S. 33:1423 the legislature clearly did not intend to “[diminish] any of the authority of the sheriff as delegated to him in the constitution and laws of this state.” See La. R.S. 33:9008.
Among the taxes no longer included in the list of taxes found in subsection B are ad valorem taxes. Thus, a question arises as to whether the sheriffs’ right to deduct a commission from ad valorem taxes was still “provided by law” after the passage of Act 689.[16] Although the legislature did not expressly state that its vesting of taxing authority on law enforcement districts superseded the sheriffs authority to deduct a commission from ad valorem taxes, that effect of the legislation is understood. The parties do not dispute that the legislature, by its enactment of La. R.S. 33:9001 through 9008, intended that the funds received by a law enforcement district’s levy of ad valorem taxes in 1977 replace the prior commission-based funding relative to ad valorem taxes as formerly provided in La. R.S. 33:1423(B) and 115(C). That conclusion is logical when considering the reason for the enactment of La. R.S. 33:9001 through 9008, which was to provide a new method for financing sheriffs’ offices by the creation of law enforcement districts. See La. R.S. 33:9001 and 9002. The legislature evidenced no intent to confine the effect of this legislation to ad valorem taxes that were being levied at the time of the fixing of the initial millage. Instead, La. R.S. 33:9003 provided that once certified by the legislative auditor, the initial millage adopted would “remain in effect in subsequent years unless changed as provided by law.” Clearly, the levy authorized by La. R.S. 33:9002 was not confined to the 1977 tax year. The sheriffs right to levy an ad valorem tax at the initial millage rate would continue indefinitely unless changed in the manner provided by law. The fact that the 1976 legislation did not provide for an automatic upward adjustment of the initial millage rate for subsequently imposed property tax millages by other taxing authorities is not determinative of the merits of the Sheriff’s argument in this case. The legislature similarly did not provide for an automatic downward adjustment of the initial millage for those millages that would expire after the 1976-77 fiscal year based on the passage of a set term. Instead, the legislature gave the sheriff the right to seek additional millages *693 to ensure adequate funding for his office. See La. R.S. 33:9008.[17]
| ^Interpreting La. R.S. 33:9001 through 9008 in a way which harmonizes and reconciles it with La. R.S. 33:1423, as amended,[18] we conclude that the grant of authority to law enforcement districts, combined with the 1976 changes to La. R.S. 33:1423, evidence the legislature’s intent to replace the ad valorem tax commission-based funding with the revenue source to be provided by the ad valorem tax collected by the law enforcement districts. Stated differently, the sheriffs’ right to deduct a commission from ad valorem taxes as formerly authorized by La. R.S. 33:1423, being in conflict with newly enacted La. R.S. 33:9001 through 9008, was repealed by the legislature by the passage of Act 689;[19] therefore, that right is no longer “provided by law.”[20] The application of these statutory provisions in this manner does not lead to absurd consequences and accomplishes the legislature’s intent. A new way of funding sheriffs’ offices was created by the legislature to alleviate the problems presented by the commission-based funding relative to ad valorem taxes collected by sheriffs on behalf of other taxing authorities. Having resolved those problems by giving sheriffs (through law enforcement districts) the power to levy their own ad valorem taxes, it would be illogical to conclude that the legislature intended to allow sheriffs to continue to deduct a commission relative to ad valorem taxes that were not in effect at the time the initial millage was determined. A contrary finding would defeat the purpose of the 1976 enactment, in that the sheriffs and the taxing authorities would continue to be subject to the former, | ^problematic commission-based funding with regard to ad valorem taxes imposed after the 1976-77 fiscal year.
In summary, we find that by way of compromise between the sheriffs and the taxing authorities for which they collect ad valorem taxes, Act 689 established a new procedure for the funding of sheriffs’ offices. The 1976 change in the method of funding did away with the prior percentage commission-based funding relative to ad valorem taxes under La. R.S. 33:1423(B) and (C) and replaced it with the source of revenue generated by the newly-created special taxing districts known as law enforcement districts. Thus, sheriffs are no longer authorized to deduct a commission on ad valorem taxes collected by them on behalf of other taxing authorities, as the costs associated with the collection of those taxes is now covered by the millage levied by the law enforcement districts. If the funds available to the sher *694 iffs’ offices through La. R.S. 33:9003(B) and (C) and La. R.S. 33:1423(B) and (C) are insufficient to satisfy the expenses of their offices, sheriffs have been given the authority to call an election and have a vote by the citizens to levy additional taxes. See La. R.S. 33:9003(B). Notably, such an interpretation is consistent with the pronouncement made in Atchafalaya Basin Levee District v. N.F. Pecquet, Jr., Assessor of West Baton Rouge Parish, 364 So.2d 610 (La.App. 1 Cir.1978).[21]
|1SDECREE
For the foregoing reasons, the decision of the court of appeal is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. The sheriff of Livingston Parish is the only sheriff in the state who deducts a commission on an ad valorem tax collected by him.

. Prior to the passage of 1977 La. Acts 591, § 3, the sheriff’s general fund was called the sheriff's salary fund.

. La. R.S. 33:1421 through 1450.1 were re-designated as La. R.S. 13:5521 through 5560 by 2011 La. Acts 248, § 3.

. In light of the chronological approach taken in this examination, the former statutory designations will be used in this opinion.

. See 1963 La. Acts 50, § 1; 1966 La. Acts 268, § 1 (added subsection E).

. This provision was repealed by 1978 La. Acts 339, § 2, effective June 30, 1978.

.See 1968 La. Acts 444, § 1 (amended commission percentages in subsection C, increasing Livingston Parish’s percentage from 12 percent to 15 percent); 1976 La. Acts 602, § 1 (amended commission percentages in subsection C, increasing Livingston Parish’s percentage from 15 percent to 17 percent).

. See 1969 La. Acts 129, § 1.

. See, for example, and by way of illustration, the three legislative changes involving the sheriff of Livingston Parish listed in footnote 7. Notably, since the passage of Act 689 in 1976, no legislative changes have been made to La. R.S. 33:1423(C). See 1977 La. Acts 591, § 1; 1984 La. Acts 261, § 1, effective June 30, 1984; 1985 La. Acts 881, § 1, effective October 1, 1985; 1986 La. Acts 1066, § 1; 1992 La. Acts 536, § 1; 1998 La. Acts, 1st Ex.Sess., No. 164, § 1, effective September 21, 1998; 2000 La. Acts, 2nd Ex.Sess., No. 1, § 1, effective June 26, 2000.

. La. R.S. 33:9004 (1976) provided:
In calculating the amount of tax which the district is entitled to levy there shall be deducted therefrom an amount equal to the actual cost of collection of taxes for the other tax recipient bodies in the parish. A pro rata share of the cost of collection shall continue to be paid to the sheriff of the parish by each tax recipient body. The amount due to the sheriff under this Section may be reviewed by the legislative auditor upon the written request of the parish governing authority and/or the school board within the parish. The sheriff shall provide such information to the legislative auditor as he shall require to perform the duties imposed upon him by this section.
This provision was repealed by 1977 La. Acts 411, § 2, effective April 30, 1977.

. La. R.S. 33:9005 (1976) provided:
The total amount of ad valorem taxes received by other taxing authorities in the parish shall not be increased because of the provisions of Sections 9001 through 9008. To accomplish this result, it shall be mandatoiy for each affected taxing authority in the year in which the special district provided for herein is created to adjust millages so that taxes are not increased as a result of the creation of the special district provided for herein. Thereafter such millages shall remain in effect unless changed or increased in a manner provided by law. In the event a taxing authority increases the taxes authorized under this Section without a public referendum, such taxing authority shall have deducted from its share of state revenue sharing funds an amount equal to such taxes increased without a public referendum plus a penalty of fifteen percent of such amount. Provided however, that nothing herein shall prohibit a taxing authority from collecting, in the year in which the special district is created or in any subsequent year a larger dollar amount of ad valorem taxes by:
(a) levying additional or increased millages as provided by law;
(b) putting additional property on the tax rolls; or
(c) increases in the fair market or use value of the property.
This Section shall not apply to millages required to be levied for the payment of general obligation bonds.

. In 1982, the legislature also repealed La. R.S. 33:9006 relative to the filing of an annual budget by the sheriff. See 1982 La. Acts 591, § 1.

. See H.B. 1285, 1976 Reg. Sess., engrossed, § 3.

. See 1963 La. Acts 50, § 1.

. See 1969 La. Acts 129, § 1.

. See 1976 La. Acts 689, § 6.

.As a means of authorizing an additional financing, the legislature in 1982 added subsection C to former La. R.S. 33:9003, which read:
In addition to the taxes authorized by this Section, the district or subdistrict may levy and collect any other taxes authorized by the Constitution of Louisiana to political subdivisions, including a tax upon the sale at retail, the use, lease or rental, the consumption, and the storage for use or consumption of tangible personal property, and on sales of services as defined by law. The tax herein authorized shall be levied and collected only after the question of its imposition has been submitted to and approved by a majority of the qualified voters has been submitted to and approved by a majority of the qualified voters of the district voting in at a regularly scheduled primary or general election to be conducted in accordance with the Louisiana Election Code. This election may be called by the sheriff and ex officio executive officer of the district.
See 1982 La. Act 840, § 1.

. See Holly & Smith Architects, Inc., 943 So.2d at 1045.

. See La. R.S. 24:176(A).

. See 1976 La. Acts 689, § 6.

. According to the court in Atchafalaya Basin Levee District, prior to the passage of Act 689, the sheriffs, as tax collectors for each parish, were authorized to deduct a commission of a certain percentage as provided by La. R.S. 33:1423(C) from various taxes (including “levee” taxes) collected by them and actually paid into the treasury or to the appropriate authority. Act 689 removed the sheriffs’ authority to deduct a percentage commission (except in instances which are not pertinent to that suit) and substituted a direct ad valorem tax for the percentage commission as the method of funding sheriffs' offices. Atchafalaya Basin Levee District, 364 So.2d at 611.