STATE OF LOUISIANA IN      *      NO. 2019-CA-0605
THE INTEREST OF G.S.

     *

                 COURT OF APPEAL

     *

                  FOURTH CIRCUIT

     *

                  STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2018-109-02-DQ-B, SECTION "B"
Honorable Tammy M. Stewart, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Tiffany G. Chase)

*Dysart, J., Concurs.*
*Chase, J., Concurs In The Result.*

Leon Cannizzaro
District Attorney
Donna Andrieu
Scott G. Vincent
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
Assistant District Attorney
619 South White Street
New Orleans, LA 70119

Theodore Knatt
ORLEANS PARISH JUVENILE COURT
1000-B Milton Street
New Orleans, LA 70122
     COUNSEL FOR APPELLANT

Tenee Felix
LOUISIANA CENTER FOR CHILDREN'S RIGHTS
1100-B Milton Street
New Orleans, LA 70122
     COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

**DECEMBER 4, 2019**

The State of Louisiana ("State") appeals the June 13, 2019 judgment of the juvenile court that dismissed the State's delinquency petition against G.S. ("Minor"), finding that the State failed to commence the adjudication hearing within the required statutory time period. For the reasons that follow, we reverse the judgment and remand with instructions.

On September 24, 2017, Minor was arrested for violating La. R.S. 14:56, simple criminal damage to property in an amount less than $1,000, a misdemeanor. Minor was thirteen years old at the time of his arrest and was released from custody to the care of Minor's aunt ("Aunt"), who provided an address on Avalon Way in New Orleans, Louisiana, the location of the alleged crime.

On April 18, 2018, the State filed a delinquency petition alleging that Minor violated La. R.S. 14:56. Aunt is listed in the petition as Minor's guardian. The record reflects that someone at the Avalon Way address told a process server that Minor and Aunt had moved to Las Vegas, Nevada, but would give them the message.[1]

---

[1] La. Ch.C. art. 847(B) provides that a copy of the petition and right to counsel form shall be served "upon every parent whose address is known or can be determined after due diligence."

On May 10, 2018, at a pre-hearing conference, the juvenile court referred Minor's appointed attorney from the Louisiana Center for Children's Rights ("LCCR") and the State's attorney to find a current address on Minor and his parent(s) and/or guardian(s).  On June 21, 2018, a possible address in Las Vegas was obtained by the juvenile court. However, two attempts by certified mail to the Las Vegas address were returned unclaimed.

On May 3, 2019, more than one year after the delinquency petition was filed, Minor's attorney moved to dismiss the petition because the State failed to commence trial within one year from the date of institution of the prosecution of the misdemeanor pursuant to La. C.Cr.P. art. 578(A)(3), which reads:

> A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable:
> * * *
>> (3) In misdemeanor cases after one year from the date of institution of the prosecution.

In response, the State argued that the statutory time was interrupted citing La. C.Cr.P. art. 579(A)(2), which provides:

> A. The period of limitation established by Article 578 shall be interrupted if:
> * * *
>> (2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state[.]

---

La. Ch.C. art. 849 provides that service on a resident parent shall be made personally, by domiciliary service, or by certified mail. Pursuant to La. Ch.C. art. 852, service on a nonresident parent shall be made personally or by certified mail at the address indicated in the petition. La. Ch.C. art. 847(A) provides that a copy of the petition and right to counsel form shall be served "upon the child."

On June 13, 2019, after considering the motion, the juvenile court dismissed the delinquency petition "pursuant to Louisiana Code of Criminal Procedure Article 578." The State appeals this judgment.

We find that the juvenile court erred in dismissing the delinquency petition adhering to the following principles in guidance of our review:

First, a comprehensive juvenile system was established by the Louisiana Legislature to protect and rehabilitate juvenile offenders[2] and to "ensure that he shall receive… the care, guidance, and control that will be conducive to his welfare and the best interests of the state[.]" La. Ch.C. art. 801.

Second, the "hallmark of special juvenile procedures is their non-criminal nature." *In re C.B.*, 97-2783, p. 17 (La. 3/4/98), 708 So.2d 391, 400. The unique nature of the juvenile system is manifested in and requires a juvenile court to take notice of (1) its non-criminal, or civil nature, (2) its focus on rehabilitation rather than retribution and on individual treatment and wellbeing of children, and (3) the

---

[2] The Louisiana Supreme Court case of *State ex rel. D.J.,* 01-2149, p. 4 (La. 5/14/02), 817 So.2d 26, 29, explains:

> The juvenile justice system dates back to the early 1900s and was founded as a way to both nurture and rehabilitate youths. "[O]rdinary retributive punishment for the adolescent [was] inappropriate," in part, because "[j]uvenile court philosophy made no distinction between criminal and non-criminal behavior, as long as the behavior was considered deviant or inappropriate to the age of the juvenile." As one commentator notes, "[t]he hallmark of the [juvenile] system was its disposition, individually tailored to address the needs and abilities of the juvenile in question." The Louisiana juvenile system was founded upon this philosophy.

*Id.* (footnote and citations omitted). Additionally, La. Const. art. 5, § 19 provides for special procedures relevant to juvenile adjudication proceedings. "These special procedures necessarily emphasize rehabilitation over retributive punishment: the "hallmark" of the juvenile system has historically been "its disposition, individually tailored to address the needs and abilities of the juvenile in question." *State ex rel. D.R.,* 10-0406, p.5 (La.App. 4 Cir. 10/20/10), 51 So. 3d 121, 124.

4

juvenile court judge's role as *parens patriae* (common guardian of the community and children) in managing the welfare of children involved in a juvenile proceeding. *State ex rel. D.R.,* 10-0406, p. 5 (La.App. 4 Cir. 10/20/10), 51 So.3d 121, 124.; *In re C.B.,* 97-2783, p. 10, 708 So.2d at 396-97.

Third, because delinquency proceedings are not criminal proceedings, the scope of review in Louisiana extends to both law and facts. *State in Interest of K.L.,* 16-1151, p. 3 (La.App. 4 Cir. 4/10/17), 217 So.3d 628, 630. La. Const. art. V, § 10(B) provides that "appellate jurisdiction of a court of appeal extends to law and facts" but in "criminal cases its appellate jurisdiction extends only to questions of law."

Finally, a "factual finding made by a trial court in a juvenile delinquency adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong." *State in Interest of A.J.,* 14-0595, p. 4 (La.App. 4 Cir. 10/1/14), 151 So.3d 659, 664 (quoting *State in Interest of R.L.,* 11-1721, pp. 3-4 (La.App. 4 Cir. 5/30/12), 95 So.3d 1147, 1150); *see also State in Interest of Batiste,* 367 So.2d 784 (La.1979)). A *de novo* review is necessary when a lower court misapplies the law and the only issue is a question or finding of law. *State in Interest of K.C.C.,* 15-1429, p. 4 (La. 1/27/16), 188 So.3d 144, 146 (citing *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.,* 06-0582, p. 9 (La. 11/29/06), 943 So.2d 1037, 1045). *See also State in Interest of C.H.,* 15-1024. p. 4, (La.App. 1 Cir. 11/6/15), 183 So.3d 567, 570 (citing *State v. Hunt,* 09-1589 (La. 12/1/09), 25 So.3d 746, 751).

In the case *sub judice*, we are considering whether the juvenile court applied the correct law when dismissing the delinquency petition. Because this case presents us with a question of law, *de novo* review is required.

After our *de novo* review, we find that the juvenile court erred in relying on La. C.Cr.P. art. 578(A)(3), the statutory time limitation for the commencement of a criminal misdemeanor trial. The applicable statutory time limitation for the commencement of a juvenile adjudication hearing is found in La. Ch.C. art. 877(B), which states in pertinent part:

> B. If the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition.

La. Ch.C. arts. 104 and 803 state that where procedures are not provided for in the Children's Code, the Code of Criminal Procedure controls in a delinquency proceeding. Because all pertinent proceedings in the case *sub judice* are addressed in the Children's Code, reliance on the Code of Criminal Procedure was in error. The courts apply La. Ch.C. art. 877 as the statutory speedy trial time limitation for the commencement of an adjudication hearing in a juvenile case, not La. C.Cr.P. art. 578. *See e.g., State in Interest of R.M.*, 17-0281 (La. 3/13/18), 239 So.3d 820; *State in Interest of F.M.,* 12-1442 (La.App. 4 Cir. 6/5/13), 118 So.3d 1232; *State ex rel. L.L.,* 09-0595 (La. App. 4 Cir. 10/7/09), 23 So.3d 970;[3] *State in Interest of T.N.,* 09-0431 (La.App. 4 Cir. 11/12/09), 25 So.3d 962.[4] Furthermore, the

---

[3] In *State ex rel. L.L.,* our Court applied La. Ch.C. art. 877 and a constitutional speedy trial analysis finding that the "State had at least thirty-seven days following the trial setting to bring L.L. to trial pursuant to La. Ch.C. art. 877(B)." *See* n. 6, *infra*.

[4] In *State in Interest of T.N.,* our Court applied both La. C.Cr.P. art. 579 and La. Ch.C. art. 877. In *T.N.,* unlike the case *sub judice*, a petition of delinquency was filed and the juvenile answered the petition. This court found that the state had a heavy burden of justifying a delay in the commencement of the adjudication hearing on the basis that the time limits were interrupted or

Supreme Court noted in *State in Interest of R.D.C., Jr.,* 93-1865 (La. 2/28/94), 632 So.2d 745, 748-49, that the time period set forth in La. Ch.C. art. 877 is mandatory.

In the case *sub judice*, the time in which to commence the statutory time for Minor's adjudication hearing - ninety days from an appearance - never commenced to run because Minor never appeared to answer the petition. The triggering of the ninety days is "the appearance to answer the petition." La. Ch.C. art. 877(B). As the time limit established by La. Ch.C. art. 877(B) never commenced, the juvenile court erred by dismissing the delinquency petition.

The juvenile court's reasoning[5] for dismissal of the petition seems not only to be based on the misapplication of La. C.Cr.P. art. 578, but also based on

---

suspended pursuant to La. C.Cr.P. art. 579. This court found that the state made no showing of good cause to extend the time period before the deadline had run and failed to show causes beyond its control to warrant an extension of the adjudication deadline. *Id.,* 09-0431, p. 6, 25 So.3d at 965. In the case *sub judice*, Article 877(B) ninety-day time limit will trigger when Minor's appears to answer. Because the ninety-day time limit never commenced to run, a discussion on the proper application and usage of La. C.Cr.P. art 579 to show a "good cause" extension under La. Ch.C. art. 877(D) is unwarranted at this time in this juvenile proceeding.

[5] In its reasons for judgment, the juvenile court stated:

> I also would like to note that in this matter because the juvenile has never appeared in front of this Court, although the public defender's offers was appointed to represent the juvenile, because the juvenile was indeed absent, they've taken on a responsibility to file this motion but technically the juvenile really does not necessarily have counsel because they've not made an appearance. But to that end I do not believe that the public defender's office or LCCR, which represents the public defender's office in Juvenile Court, has ever requested any type of, or has ever made any type of waiver of deadlines.[*] The Court on its own motion had extended the deadlines with hopes that there would be some kind of resolution that we could basically agree upon to get this matter resolved, and that has not happened. We have never been able to make contact with the defendant. We've never been able to make contact with anyone in the defendant's family. We don't know whether or not the addresses that the certified mail was sent to is even indeed in fact the address of the defendant.
> In addition to that, this matter was petitioned April 18th of 2018. It is now June 13th of 2019, more than a year has passed. The State has not made any effort to make a determination as to whether or not the individual still resides in the State of Louisiana. I've given the State ample opportunities. If the State does intend to proceed with the prosecution of this matter, then the State has to make some type of effort to locate the juvenile's whereabouts, which has not been done.

7

principles found in a constitutional speedy trial analysis,[6] which was not before the

court, and on a court's dismissal for "good cause," which is no longer allowed

under the law.[7]

---

> And everything that's been done in order to determine any type of accurate address has been done by the Court and at the expense of the Court. It is past a year, there is nothing else that this Court can do ensure that the juvenile has been served.

*We specifically note that Minor's attorney waived the Article 854 answer hearing deadline on four separate occasions: 5/31/18, 8/2/18, 1/10/19, and 2/14/19. This opinion does not address the issue as to whether the Article 854 answer hearing deadline can be waived by an attorney. Nonetheless, we do find that, when a juvenile is not in continued custody, a juvenile court is mandated to hold an Article 854 answer hearing "within fifteen days after the filing of the petition" and if the juvenile does not make an appearance, the court must then proceed with an Article 854(C) good cause hearing to inquire as to the reason for the nonappearance and delays and to establish a record to allow for a proper appellate review as to "good cause" for the delay in the juvenile proceeding.

[6] Louisiana jurisprudence recognizes two separate and distinct bases for a right to a speedy trial, which are not equivalent and require wholly separate inquiries: a statutory right granted by La. Ch.C. art. 877 and a constitutional right guaranteed by the Sixth Amendment to the United States Constitution and Article I, §16 of the Louisiana Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *State v. Love*, 00-3347, p.14 (La. 5/23/03), 847 So.2d 1198, 1209 (citing *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)); *see also*, La. Const. Art. I, §16. "In determining whether a defendant's constitutional right to a speedy trial has been violated, courts consider the four *Barker* factors: (1) the length of delay; (2) the reason for delay; (3) the assertion of his right to speedy trial; and (4) the prejudice resulting from the delay." *Love,* 00-3347, p.15, 847 So.2d at 1210 (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)); *see also State v. Reaves*, 376 So.2d 136 (La. 1979) (adopting *Barker*). In *State ex rel. L.L.,* 09-0595, p.3, 23 So.3d at 973, our Court applied the *Barker* factors in a juvenile case. Additionally, both La. Ch.C. arts. 102 and 802 provide that due process must be accorded to each child in juvenile court. Moreover, in *State in Interest of D.J.*, 01-2149, p. 5, 817 So.2d at 30, the Court stated that, "[b]ecause of the fundamental differences between the adult and juvenile systems, however, due process, and implicitly fundamental fairness do not require that every constitutional right guaranteed to adults are automatically granted to juveniles. (quoting *In re C.B.,* 97-2783, pp. 10-11 (La. 3/11/98),708 So.2d 391, 396-97). In *In re C.B.,* 97-2783, p. 11, 708 So.2d at 397, the Court stated:

> Because of the non-criminal nature of juvenile proceedings, these safeguards [right to trial by jury, the right to confrontation and cross-examination of witnesses, and the right against self-incrimination] do not apply to juveniles by virtue of the Incorporation Doctrine, but rather through the concept of fundamental fairness inherent in the Due Process Clause of the Fourteenth Amendment. [*McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971)] at 551, 91 S.Ct. at 1984. The Due Process Clause of the Fourteenth Amendment commands not a particular procedure, but only a fundamentally fair result. *Id.* at 554, 91 S.Ct. at 1990-91. (Brennan, J. concurring in part and dissenting in part).

Nonetheless, the juvenile court's finding that the State was wholly responsible for the delays in the juvenile proceeding is misplaced. The delay in this juvenile matter is greatly attributable to Minor being allegedly removed from the state after his arrest resulting in the nonappearance of the Minor and Aunt.

In *State ex rel. L.L.,* 09-0595 (La.App. 4 Cir. 10/07/09), 23 So.3d 970, a delinquency petition was filed against L.L. for possession of marijuana on February 6, 2008. On February 26, 2008, L.L. failed to appear and a warrant was issued for his arrest. On December 11, 2008, L.L. appeared and answered the petition entering a denial of the charged offense, and the trial was set for February 2, 2009.[8] Subsequently, the trial court dismissed the petition against L.L. based on

Thus, we recognize that the delinquency proceeding against Minor may eventually become fundamentally unfair and may require a dismissal and/or an institution of a Child in Need of Care or Families in Need of Services proceeding. However, a constitutional speedy trial application prior to the appearance of a child is premature.

[7] Prior to 2011, La. Ch.C. art. 876 stated: "For good cause, the court may dismiss a petition on its own motion, on the motion of the child, or on motion of the petitioner." Article 876 now reads that the "court may dismiss a petition on the motion of the district attorney. The 2011 revision eliminated "good cause" as a basis of dismissal by the juvenile court. Juvenile courts do have authority to dismiss a delinquency petition pursuant to La. Ch.C. art. 877(C), which reads, "If the hearing has not been commenced timely, upon motion of the child the court shall release a child in custody and shall dismiss the petition." However, the remedy for delays in the answer of a petition does not include a dismissal of the petition. In *State in Interest of L.D.*, 14-1080, p. 5 (La. 10/15/14), 149 So.3d 763, 765-66, the Supreme Court stated: "The court of appeal noted, and all parties agree, that La. Ch.C. art. 854 specifies no remedy when the time afforded for an answer hearing is exceeded without good cause. . . Only when the time afforded by La. Ch.C. art. 877 to commence the delinquency adjudication following the answer hearing is exceeded must the court dismiss the petition at the request of the juvenile." In *State in Interest of C.G.,* 19-01653, p. 1 (La. 11/5/19), --- So.3d ---, 2019 WL 5792122 *1, the Court stated: "The Louisiana Children's Code sets forth clear mandatory deadlines within which a juvenile must be adjudicated. The legislature has made it clear that if an adjudication hearing has not commenced timely, upon motion of the child, the court shall dismiss the petition." *Id.* (citations omitted).

[8] On February 2, 2009, L.L. appeared for trial but the state orally moved for continuance. In response to the denial of its motion, the State dismissed the petition by entering a *nolle prosequi.* On February 20, 2009, the state re-instituted the charge against L.L. On March 30, 2009, the matter again came for trial. However, because the state had previously dismissed the case in response to the trial court's denial of its motion for a continuance, the State had at least thirty-seven days following the trial setting to bring L.L. to trial pursuant to La. Ch.C. art. 877(B).

9

La. Ch.C. art. 876, prior to its 2011 amendment when it permitted the court to dismiss the petition on its own motion for good cause.[9] We noted that the state has authority to enter a *nolle prosequi* and reinstitute a charge, but also recognized that it may be overborne under the circumstances of any given case by the defendant's constitutional right to a speedy trial. Applying the *Barker* factors,[10] we stated:

> The delay in the present case was just over twelve months. As the State correctly points out, the State had at least thirty-seven days following the trial setting to bring L.L. to trial pursuant to La. Ch. Code Art. 877(B). The record reflects that the State requested only a single continuance on the day of trial; the State's request for a continuance was based on the police officers' failure to appear. In *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, the Court comments that "a valid reason, such as a missing witness, should serve to justify appropriate delay." It is also apparent from the record that the delay in this matter is partially attributable to L.L.'s failure to appear. Moreover, L.L., who was not incarcerated during the delay, has not alleged, nor does the record support, a finding of prejudice caused by the delay. (Footnote omitted.)

*Id.,* 09-0595, p. 4, 23 So.3d at 973 (footnote omitted). Likewise, in the case *sub judice*, delays in the juvenile proceeding should not be solely attributed to the State, as found by the juvenile court. Delays were also the result of the Aunt's alleged removal of Minor from the state after his arrest. The juvenile court erred in finding otherwise.

Moreover, the statutory timing mechanisms found in the Children's Code[11] are designed such that when the question of a child's whereabouts is raised (which

---

[9] *See* n. 7, *supra*.

[10] *See* n. 6, *supra*.

[11] In delinquency cases involving a misdemeanor where the child is not in continued custody, as in the case *sub judice*, the pertinent statutory timing scheme is as follows: (1) a delinquency petition shall be filed within the time limitation set forth in the Code of Criminal Procedure in that the Children's Code is silent on this issue, *see State in ex. rel. D.G.,* 05-0434, p. 4, (La.App.

inherently includes questions of a child's safety and well-being), no further steps in a delinquency case can take place, except for proceedings necessary to immediately locate the child and/or parent(s) or guardian(s) to determine the child's welfare. Particularly, in the case *sub judice*, proper procedural steps need to be taken to determine why Minor has not appeared to answer the petition and why Minor may have been removed from the jurisdiction after his arrest as the record reveals.[12] A dismissal of the delinquency petition against Minor is improper at this time and contrary to the Children's Code's statutory scheme which is designed to ensure a child's wellbeing[13] and contrary to jurisprudence that recognizes the

_____

4 Cir. 12/21/05), 922 So.2d 574, 576, and La. C.Cr.P. art. 572(A)(3); (2) the child must answer the petition within fifteen days after the petition is filed, *see* La. Ch.C. art 854(B); and (3) the adjudication hearing must commence within ninety day of the appearance of the child to answer the petition, *see* La Ch.C. art. 877(C).

[12] Pursuant to La. C.Cr.P. art. 579(A)(1), an interruption occurs when a defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state. This could be used as a "good cause" extension of the time justification when a juvenile court judge is making a "good cause" finding under La. Ch.C. arts. 854(C) and 877(D).

[13] La. Ch.C. art. 801 provides that a child who is accused of committing a delinquent act shall receive due process that is conducive to his welfare. The Children's Code is designed to consider the unique attributes and limitations of a child when providing for due process together with proper rehabilitation services and treatment. For example, La. Ch.C. art. 810 (a child's right to waive counsel) limits the circumstances in which a child can waive his right to counsel in order to protect a child. *See also* La. Ch.C. art. 832 (how mental capacity is raised and the effect thereof) provides that "[w]hen the question of the child's mental incapacity to proceed is raised, there shall be no further steps in the delinquency proceeding, except the filing of a delinquency petition." "[T]he importance of having physicians who have expertise in child development to assess claims of incapacity" due to recent research indicating that "[d]eficiencies in risk perception, as well as immature attitudes toward authority figures, may undermine competent decision making in ways that standard assessments of competence to stand trial do not capture." La. Ch.C. art. 832 (Official Revision Comment B) (quoting The MacArthur Juvenile Adjudicative Competence Study, published as Grisso et al., *Juveniles' and Adults' Competence as Trial Defendants*, 27 L. & Human Behavior 33 (2002). Juvenile proceedings should initially inquiry as to a child's "functional incompetency: age; intelligence quotient; a history of severe mental illness, particularly psychosis; mental retardation; a history of special educational placements or diagnosis of severe learning disabilities; and living in an extremely traumatic environment." *Id.; State in Interest of R.M.*, 17-0281, p. 5 (La. 03/13/18), 239 So.3d 820, 823. Likewise, no further step in the delinquency proceedings may occur until a child's whereabouts are determined and an appearance is made.

11

importance of a court's application of the juvenile laws utilizing an analysis that focuses on the welfare of the child.[14]

An appearance of the child to answer a delinquency petition is necessary in a juvenile proceeding in that it not only triggers the running of the time limitation to hold an adjudication hearing, but an appearance is required to proceed with the delinquency proceeding[15] as reflected in the following articles of the Children's Code pertinent to an answer hearing: (1) La. Ch.C. art. 855(A) mandates the court to "determine that the child is capable of understand statements about his rights under the Code;" (2) La. Ch.C. art. 855(B) mandates the court to advise the child of various aspects of the juvenile proceedings, including the nature of the delinquency proceeding and the allegations of the petition, the range of answers to the petition that the child can make, and the right to an adjudication hearing; and (3) La. Ch.C. art. 856 requires the child to answer the petition, particularly "[a]

---

[14] "[T]he unique nature of the juvenile system is manifested in its non-criminal, or "civil," nature, its focus on rehabilitation and individual treatment rather than retribution," *In re C.B.,* 97-2783, p. 10, 708 So.2d at 396-97. *See also State ex rel. D.R.,* 10-0406, p. 5, 51 So.3d at 124 ("[t]hese special procedures necessarily emphasize rehabilitation over retributive punishment[.]").

[15] In comparison, in a criminal proceeding, the state carries a heavy burden in discovering the whereabouts of the defendant because, under a statutory speedy trial analysis, once the prosecution of a misdemeanor is instituted in criminal court, the State has one year to bring the defendant to trial. La. C.Cr.P. art. 578(A)(3). Once it is established that the state failed to commence the trial, a heavy burden shifts to the state to prove that an interruption or suspension of the time limit tolled prescription. *State v. Morris*, 99-3235, p. 1 (La. 2/18/00), 755 So.2d 205, 205. In order to meet the heavy burden of proof imposed by La. C.Cr.P. art. 579(A)(2), the prosecution must show that it has "exercise[d] due diligence in discovering the whereabouts of the defendant as well as in taking appropriate steps to secure [his] presence for trial once the district attorney has found [him]." *State v. Thomas*, 13-0816, pp. 5-6 (La.App. 4 Cir. 3/19/14), 138 So.3d 92, 96 (citation omitted). In contrast, in a juvenile proceeding, an actual appearance by the child is necessary to begin the time for an adjudication hearing to commence; thus, the burden in discovering the whereabouts of a child is equally distributed on the attorneys for the child and state as well as the juvenile court.

child shall plead when called upon to answer. If he stands mute, refuses to plead, or plead evasively, a denial of the petition shall be entered of record."

After a review of the record, we find that the juvenile court failed to hold a proper La. Ch.C. art. 854 good cause hearing for our review.[16] Thus, the juvenile court is ordered to hold such a hearing to determine whether good cause exists for the failure of Minor "to appear to answer the petition within fifteen days after the filing of the petition." La. Ch.C. art. 854(B).[17]

A "juvenile court is vested with broad discretion to arrive at solutions balancing the needs of the child with interests of society." *State ex rel. S.R.,* 08-785, pp. 4-5 (La.App. 4 Cir. 10/8/08), 995 So.2d 63, 66 (citing *State in Interest of R.W. and N.W.,* 97-0268 (La.App. 4 Cir. 4/16/97), 693 So.2d 257). One goal of the Children's Code is to avoid a ruling which "[the juvenile judge] knows is only a dead end for the child." *State ex rel. D.R.,* 10-0406, p. 5 (La. App. 4 Cir. 10/20/10), 51 So. 3d 121, 124 (quoting McGough & Triche, *Louisiana Children's Code Handbook* 2009-2010 (West), pp. 479-80 (quoting Polier, *A View from the Bench* 30 (1964))). Additionally, the paramount obligation of attorneys for Minor and the State at this time in Minor's juvenile case is to ensure the welfare of Minor by determining his whereabouts. At the La. Ch.C. art. 854 good cause hearing, a

---

[16] Courts in this state adhere to a practice of conducting an errors patent review in juvenile delinquency cases. *State in Interest of K.L.*, 16-1151, p. 3 (La.App. 4 Cir. 4/10/17), 217 So.3d 628, 630; *State ex rel. K.E.C.,* 10-0953, p. 3 (La.App. 3 Cir. 12/8/10), 54 So.3d 735, 737; *State in Interest of W.B.*, 16-0642, p. 4 (La.App. 4 Cir. 12/7/16), 206 So.3d 974, 978; *See State in Interest of S.J.*, 13-1025, p. 4 (La.App. 4 Cir. 11/6/13), 129 So.3d 676, 679 (citing *State in Interest of A.H.*, 10-1673, p. 9 (La.App. 4 Cir. 4/20/11), 65 So.3d 679, 685). The record reflects only one finding of good cause by the court to delay the time in which to appear to answer on January 10, 2019. No reason for good cause was stated and no evidentiary hearing was held.

[17] *See* n. 15, *supra.*

13

totality of the circumstances analysis should be made focusing on the welfare of Minor and arrive at solutions to ensure a proper resolution to this delinquency proceeding. At this time in the juvenile court proceedings, the best interest of Minor and society do not conflict in that both interests require the immediate location of the whereabouts of Minor. Moreover, the burden in discovering the whereabouts of Minor rests equally on the attorneys in the case as well as the juvenile court judge.[18]

The juvenile court should be mindful of La. Ch.C. art. 850(A) ("[w]hen a delinquency petition involves a child whose parent is a resident, the court shall issue a summons commanding that the child, his parents, and such other persons as the court deems proper appear before the court at a designated time and place"), and La. Ch.C. art. 851, by which the juvenile court may order a person to be taken into custody and immediately brought before the court when that person has failed to appear in response to a properly served summons.[19]

Accordingly, we reverse the judgment dismissing the petition and remand for further proceedings in the juvenile court consistent with the views expressed here and instructions.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

[18] *See* n. 5, *supra*.

[19] This opinion does not address whether Minor's parent(s) and/or guardian(s) were properly served, an issue that needs to be fully addressed at the La. Ch.C. art. 854 good cause hearing and properly evidenced to allow for a thorough appellate review. *See* La. Ch.C. art. 849(B) and 852(B).