# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 22-49

OPELOUSAS GENERAL HOSPITAL AUTHORITY,
A PUBLIC TRUST

VERSUS

LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY
D/B/A BLUE CROSS/BLUE SHIELD OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 16-C-3647-C
HONORABLE LEDRICKA THIERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, John E. Conery, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

**Mark A. Cunningham**
**Michael C. Drew**
**Graham H. Ryan**
**Jones Walker, LLP**
**201 St. Charles Avenue, 49th Floor**
**New Orleans, Louisiana  70170**
**(504) 582-8318**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Louisiana Health Service & Indemnity Company**


**Richard Sherburne**
**Attorney At Law**
**Post Office Box 98029**
**Baton Rouge, Louisiana  70898**
**(225) 298-1666**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Louisiana Health Service & Indemnity Company**


**Pride J. Doran**
**Raven C. Boxie**
**Doran & Cawthorne, PLLC**
**Post Office Box 2119**
**Opelousas, Louisiana  70571**
**(337) 948-8008**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Louisiana Health Service & Indemnity Company**


**Ryan M. Kantor**
**Morgan, Lewis & Bockius**
**1111 Pennsylvania Avenue, NW**
**Washington, DC 20004-2541**
**(202) 739-5343**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Louisiana Health Service & Indemnity Company**


**Douglas Michael Chapoton**
**Attorney At Law**
**Post Office Box 98029**
**Baton Rouge, Louisiana  70898**
**(225) 295-2116**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Louisiana Health Service & Indemnity Company**

**Jessica W. Chapman**
**Attorney At Law**
**Post Office Box 98029**
**Baton Rouge, Louisiana  70898**
**(225) 295-2116**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Louisiana Health Service & Indemnity Company**


**Joseph C. Giglio, Jr.**
**Liskow & Lewis**
**Post Office Box 52008**
**Lafayette, Louisiana  70503**
**(337) 232-7424**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **Blue Cross Blue Shield Association**


**James A. Brown**
**Liskow & Lewis**
**701 Poydras Street, Suite 5000**
**New Orleans, Louisiana  70139-5099**
**(504) 581-7979**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **Blue Cross Blue Shield Association**


**Patrick Craig Morrow, Sr.**
**Morrow, Morrow, Ryan & Bassett**
**324 West Landry Street**
**Opelousas, Louisiana  70570**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Opelousas General Hospital Authority, A Public Trust**


**Michael H. Rubin**
**McGlinchey Stafford**
**301 Main Street, Suite 1400**
**Baton Rouge, Louisiana  70801**
**(225) 383-9000**
**COUNSEL FOR:**
    **Louisiana Department of Insurance**

**Thomas Allen Filo**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, Louisiana 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Opelousas General Hospital Authority, A Public Trust**


**Shelton Dennis Blunt**
**Phelps Dunbar, LLP**
**Post Office Box 4412**
**Baton Rouge, Louisiana 70821-4412**
**(225) 346-0285**
**COUNSEL FOR:**
**Blue Cross Blue Shield of South Carolina**


**Stephen B. Murray**
**Stephen B. Murray, Jr.**
**Arthur M. Murray**
**Murray Law Firm**
**701 Poydras Street, Suite 4250**
**New Orleans, Louisiana 70139**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Opelousas General Hospital Authority, A Public Trust**


**Valerie E. Fontenot**
**Frilot, LLC**
**1100 Poydras Street, Suite 3700**
**New Orleans, Louisiana 70163-3600**
**(504) 599-8000**
**COUNSEL FOR:**
**Ochsner Clinic Foundation**


**Ryan K. French**
**Taylor Porter**
**Post Office Box 2471**
**Baton Rouge, Louisiana 70821**
**(225) 381-0262**
**COUNSEL FOR:**
**Franciscan Missionaries of Our Lady Health System, Inc.**

**William E. Kellner**
**Liskow & Lewis**
**Post Office Box 52008**
**Lafayette, Louisiana 70505-2008**
**(337) 232-7424**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **Blue Cross Blue Shield Association**
    **Blue Cross Blue Shield of Louisiana**
    **Louisiana Health Service & Indemnity Company**

**CONERY, Judge.**

Plaintiff, Opelousas General Hospital Authority, filed this antitrust matter as a prospective class action in August 2016 naming Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana (BCBSLA) as the sole defendant. Plaintiff alleged therein that it had been disadvantaged in the health care provider agreement it entered into with BCBSLA due to the insurer's participation in a plan involving related entities. BCBSLA's present appeal questions the trial court's denial of BCBSLA's motion for summary judgment by which it sought dismissal of Plaintiff's petition. For the following reasons, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Plaintiff's petition is comprised of an introductory "Factual Background and Allegations" section by which Plaintiff advanced the factual basis for its claim for recovery due to injury caused by BCBSLA's purported violations of antitrust provisions related to restraint of trade and monopolistic practices. Plaintiff thereafter framed its claim through the use of four "Counts."

In Count I, Plaintiff identified itself as presumptive class representative of those similarly situated in its overall claim that BCBSLA acted in violation of the antitrust provisions of La.R.S. 51:121, *et seq.* Plaintiff's claims stem, in part, from BCBSLA's participation in the "BlueCard Program" **whereby patients from out of state Blue Cross plans receive the same discounted in-network rates from providers that were negotiated with each individual state's Blue Cross insurer**. Plaintiff defined the class as all Louisiana healthcare providers who, at the time of

---

[1] This matter has previously appeared before this court, as detailed below.

the filing of the petition, were 1) citizens of Louisiana; 2) contracted with BCBSLA; and 3) had one or more medical bills reimbursed pursuant to that contract for any services rendered to a patient in Louisiana.

In Count II, Plaintiff specifically alleged that BCBSLA acted in concert with the Blue Cross Blue Shield Association (the "Association") and certain other Blue Cross plans "to restrain trade and commerce in Louisiana, acts which are expressly prohibited by La.R.S. 51:122." In particular, Plaintiff claimed that as a result of agreements between BCBSLA and Blue Cross companies, other Blue Cross Companies were precluded from entering the Louisiana healthcare market and/or contracting for their own reimbursement rates, thereby ensuring that BCBSLA "would gain an extremely dominant and artificially high market share which could not have been achieved but for the elimination of would be competitors from the Louisiana healthcare market in the State of Louisiana." Plaintiff alleged that such contracts and actions constituted an impermissible restraint of trade and/or commerce in violation of La.R.S. 51:122.

In Count III, Plaintiff alleged that BCBSLA's entry into "unlawful" agreements with other Blue Cross plans was an attempt to "monopolize the Louisiana healthcare insurance market to the detriment of Plaintiff and the Plaintiff Class members." Plaintiff alleged that this practice violated La.R.S. 51:123, the monopolization claim.

Given its allegations of violations under La.R.S. 51:122 and La.R.S. 51:123, in Count IV, Plaintiff sought recovery of treble damages and attorney fees pursuant to La.R.S. 51:137.

This case has been before this court on four different occasions on various procedural rulings. Initially, a panel of this court affirmed the class certification.

2

*See Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co.*, 19-736 (La.App. 3 Cir. 11/12/19), 283 So.3d 619, *writ denied*, 19-1848 (La. 1/28/20), 291 So.3d 1054. (*Opelousas I*). By consolidated writ application, the panel later affirmed the trial court's denial of the Association's petition for intervention, finding no abuse of discretion in the trial court's determination that to permit the intervention would cause needless delay. *See Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co.*, 19-265 (La.App. 3 Cir. 11/12/19), 284 So.3d 643, *writ denied*, 19-1912 (La. 1/28/20), 291 So.3d 1060 (*Opelousas II*). The panel recognized, in part, that the Association sought to intervene merely as a method by which it would seek removal to federal court where other actions were pending against various Blue Cross entities. Plaintiff in this case had successfully avoided removal to federal court as it proceeded against BCBSLA alone and did so purely under theories of Louisiana law, not combined federal and state claims as alleged in the matters proceeding in federal court.

This case returned to this court, in *Opelousas General Hospital Authority v. Louisiana Health Service & Indemnity Co.*, 21-174 (La.App. 3 Cir. 4/5/21), _ So.3d _ (2021 WL 1251134) (*Opelousas III*), wherein a panel of this court affirmed the trial court's denial of BCBSLA's motion to strike the motion for partial summary judgment filed by Plaintiff. The panel rejected BCBSLA's contention that Plaintiff's pursuit of the partial summary judgment would create a de facto uncertified subclass whose interests were not being pursued by the motion under consideration. Rather, the panel recognized that Plaintiffs were pursuing a *partial* summary judgment as permitted by La.Code Civ.P. art. 966(A)(1), as Plaintiffs were merely seeking "to dispose of claims on behalf of claimants where there exists no genuine issue of material fact as to their ability to recover." *Id*. at _. Responding to an argument

reflecting shades of an argument appearing in the present appeal, the panel explained that "[c]ontrary to BCBSLA's contention, Plaintiffs have not abandoned their claims as to the rest of the class in seeking to make use of the partial summary judgment tool and they specifically reserve their right to later pursue claims on behalf of claimants where there exists a genuine issue of material fact." *Id.* at _.

In a corresponding appeal, the same panel addressed the merits of the trial court's granting of Plaintiff's motion for partial summary judgment. *See Opelousas General Hospital Authority v. Louisiana Health Service & Indemnity Company*, 21-175 (La.App. 3 Cir. 4/5/21), 318 So.3d 259 (*Opelousas IV*). The trial court had examined Plaintiff's motion, which sought the return of contractual discounts for Plaintiff's patients who were insured by out-of-state Blue Cross insurers in light of the underlying BlueCard program, and granted Plaintiff's motion for partial summary judgment, concluding that the framework operated in restraint of trade in violation of La.R.S. 51:122. The trial court awarded Plaintiffs $416,830,039.60 together with costs and legal interest.

In *Opelousas IV*, before turning to the review of the partial summary judgment, the panel first considered an exception of non-joinder filed by the Association for the first time on appeal by which it asserted that it, along with all other Blue Cross companies, were parties needed for just adjudication. BCBSLA joined in the exception. The panel denied the exception, explaining that the record contained no evidence supporting the exception since Plaintiff is "*only seeking review of the provider agreements with BCBSLA* and money damages under those agreements." *Id.* at 267. *Opelousas Gen. Hosp. Auth.*, 318 So.3d at 267 (emphasis added). The panel also commented that Plaintiff was "not attacking the entire Blue Card Program or any of the Association's rules. Thus, there is no reason that complete relief could

4

not be afforded in the absence of these additional parties." *Id.* BCBSLA references that statement in the present appeal, as reflected in the discussion below.

On the merits, the panel in *Opelousas IV* reversed the partial summary judgment entered in favor of the Plaintiff on an evidentiary basis given the restraint of trade claim at issue under La.R.S. 51:122. The panel again identified that the "case before *us only questions the agreements between the medical providers and the insurer, BCBSLA*" and therefore the query at issue involved only an allegation of a "vertical" restraint of trade subject to a rule of reason analysis. *Opelousas Gen. Hosp. Auth.*, 318 So.3d at 269 (emphasis added). The panel specifically determined that it was "prohibited from considering whether the Blue Card Program constituted an illegal horizontal cartel" and that its analysis was therefore limited to the "vertical provider agreements." *Id.* at 269. On consideration of that agreement, however, the panel concluded that Plaintiff failed to carry its burden of proof on the "rule of reason" analysis insofar as it was required to demonstrate that BCBSLA "(1) engaged in conspiracy (2) that restrained trade or injured competition (3) in a particular market." *Id.* While Plaintiff produced documentary evidence by introducing billing spread sheets, the panel found that it provided no "evidence of injury to competition in general" or the parameters of the "relative economic market," the second and third elements of the rule of reason analysis. *Id.* at 270. The panel theorized in dicta that Plaintiff would have been able to prevail on a motion for summary judgment had it supplied relevant evidence. Plaintiff, however, failed to produce such evidence in support of its motion.

Following the release of the *Opelousas III* and *IV* opinions, BCBSLA filed the motion for summary judgment now under review, seeking dismissal of the entirety of Plaintiff's petition, doing so "in light of the Third Circuit Court of

Appeal's April 5, 2021 opinion in this action and a provision of the Louisiana Insurance Code (La.R.S. 22:1007)."

BCBSLA first contended that this court identified the "vertical agreement" between Plaintiffs and BCBSLA as the pertinent focal point in connection with Plaintiff's summary judgment motion, and that Plaintiff had conceded that point in representations to the court. Referencing the petition, however, BCBSLA noted that both Count II (restraint of trade in violation of La.R.S. 51:122) and Count III (creation of a monopoly in violation of La.R.S. 51:123) involved allegations regarding the contracts creating the BlueCard program, not the vertical agreements involving the Plaintiff health care providers. BCBSLA thus argued that the panel's recognition that the pertinent inquiry involved only the vertical agreement and foreclosed all possibility of Plaintiff recovering under the restraint of trade claim under La.R.S. 51:122 and the monopoly claim under La.R.S. 51:123.

BCBSLA additionally argued that La.R.S. 22:1007(J)(2), as amended by the legislature in 2016, specifically authorizes the type of provider agreement as challenged by Plaintiff in its claim under La.R.S. 51:122. BCBSLA maintained that since La.R.S. 22:1007(J)(2) provides the more specific and latest legislative expression in the field, it precluded application of the antitrust statutory measures advanced by Plaintiff's petition, namely those related to Plaintiff's contention that the BlueCard program violated the prohibition on the restraint of trade as provided by La.R.S. 51:122.

The trial court rejected BCBSLA's arguments in denying its motion for summary judgment. In reasons for ruling, the trial court found no compelling statement from the prior rulings of this court that would mandate dismissal of the petition. Moreover, the trial court found no statutory support for the contention that

6

La.R.S. 22:1007 negates application of La.R.S. 51:122 and La.R.S. 51:123, related to the restraint of trade and monopoly claims respectively.

BCBSLA filed this timely appeal of that ruling. We consider this appeal pursuant to La.R.S. 51:135, as relative to review of claims related to monopolies and restraint of trade.[2]

### ASSIGNMENTS OF ERROR

BCBSLA assigns the following as error:

1. The District Court erred as a matter of law by failing to grant summary judgment on the BlueCard Claim in Count II of the Petition because it relied on a fundamentally flawed reading of La.R.S. 22:1007, which is inconsistent with the plain words of the statute and the Louisiana Department of Insurance's interpretation of its own code.

2. The District Court erred as a matter of law by failing to grant summary judgment on the Market Allocation and Monopolization Claims when this Court has expressly stated that Plaintiffs have limited their case to challenging the agreements between providers and BCBSLA.

3. The District Court ignored Plaintiffs' repeated judicial admission that their case does not challenge any agreement among BCBSLA, [the Association,] and the other Blue Plans and, as a result, is limited to a vertical challenge of the provider agreements, mandating summary judgment on Plaintiffs' horizontal Market allocation and Monopolization Claims.

4. The District Court erred as a matter of law by failing to grant summary judgment on the Blue Card, Market Allocation, and Monopolization Claims because Plaintiffs submitted no evidence and no statement of material facts as required by La. Code Civ. Proc. art. 966 and Uniform District Court Rule 9.10.

---

[2] Louisiana Revised Statutes 51:135 provides:

All interlocutory judgments in the cases affected by this Part, and not otherwise provided for, shall be appealable within five days and shall be heard and determined within twenty days after appeal is lodged, and any interlocutory judgments not appealed, except those rendered during the progress of the trial, shall be final, and shall not be reopened on final appeal. Such appeals shall be on the original papers, on the order of the district judge, if a transcript cannot be prepared in time.

We address BCBSLA's arguments in turn.

## DISCUSSION

*Summary Judgment*

Louisiana Code of Civil Procedure Article 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." With regard to the applicable burden of proof, Article 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

In reviewing the trial court's ruling on a motion for summary judgment, an appellate court applies the *de novo* standard of review using the same criteria applied by the trial court in determining whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

*Assignment of Error 1 – Louisiana Revised Statutes 22:1007(J)(2)*

In its first assignment of error, BCBSLA contends that the trial court erred in failing to dismiss Plaintiff's Count II claim based upon what BCBSLA characterizes as a flawed reading of La.R.S. 22:1007. Titled "Requirements of provider contracts; communications," La.R.S. 22:1007 provides, in pertinent part:

J. (1) A managed care organization that offers coverage for healthcare services through one or more managed care plans shall not require a provider, as a condition of participation or continuation in the provider network of one or more health benefit plans of the managed care organization, to serve in the provider network of all or additional health benefit plans of the managed care organization. A managed care organization is prohibited from terminating a provider agreement based on the provider's refusal to serve in the network for such additional plans.

(2) *Nothing in this Subsection shall prohibit a managed care organization from enabling its affiliated members from other states to obtain healthcare service benefits while traveling or living in the managed care organization's service area including extending the provisions of the provider contract to provide for such services.*

(Emphasis added.)

Plaintiff alleged in Count II that BCBSLA violated La.R.S. 51:122[3] by requiring the subject health care providers to accept a negotiated reimbursement rate when providing in-state care for out-of-state Blue Plan members. BCBSLA maintains, however, that this type of arrangement is expressly provided for by La.R.S. 22:1007(J)(2)., for "Requirements of Provider Contracts," quoted *infra*.

As it did before the trial court, BCBSLA contends in this appeal that, since La.R.S. 22:1007(J)(2) explicitly authorizes the agreements challenged by Plaintiff in Count II, "a managed care organization *is always free to extend the terms of its provider contracts* to its affiliated members from other states when they are traveling or living in Louisiana." (Emphasis added.) BCBSLA contends that, given the legislature's permissive view of that type of arrangement, there are no genuine issue

---

[3] Louisiana Revised Statutes 51:122, titled "Contracts, combinations and conspiracies in restraint of trade illegal; penalty," provides, in pertinent part:

A. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.

B. Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both.

of material fact, and that the challenged BlueCard provision comports with Louisiana law, particularly La.R.S. 22:1007(J)(2). Focusing on that factual component of the summary judgment standard, BCBSLA contends that "Plaintiffs have produced no evidence to the contrary," and, therefore, BCBSLA is entitled to a judgment on Plaintiff's "BlueCard claim." Additionally, BCBSLA again suggests that La.R.S. 22:1007(J)(2) is the more recent and specific statute in the field, and that it must prevail as an exception to the more general antitrust statutes of La.R.S. 51:122 and 51:123.

BCBSLA correctly identifies the language of La.R.S. 22:1007(J)(2) as permitting the type of arrangement complained of in Plaintiff's BlueCard claim in Count II. The statute does not otherwise, however, offer BCBSLA an absolute shield from the restraint of trade prohibition of La.R.S. 51:122 alleged by Plaintiff and which is at the heart of this issue. Rather, La.R.S. 22:1007, on its face, makes no reference to the exclusive/preclusive effect of the statutory provision, or in any way suggests that it operates outside the constraints of La.R.S. 51:122 as it pertains to restraint of trade. In this case, the facts as to the latter claim have simply not been developed and presented to the court so as to provide the larger context to the trial court.

Furthermore, as Plaintiff suggests, reference to the statute as a whole indicates that La.R.S. 22:1007(J)(2) directly pertains to (J)(1). Paragraph (J)(2) specifically signals as much as it begins by stating that, "*Nothing in this Subsection . . . .*" The legislature provided no explicit statement that La.R.S. 22:1007(J)(2) provides an exception to the provisions of La.R.S. 51:122. Absent such an expression, the trial court did not err in concluding that the statutory measures operate alongside one another, with the type of agreement specifically permitted by La.R.S. 22:1007

potentially implicating a violation of La.R.S. 51:122 under appropriate and proven factual circumstances. Those facts have simply not been developed conclusively for either party at this point in the proceeding for purposes of the partial summary judgment at issue in this appeal.

Neither do we find merit in BCBSLA's contention that La.R.S. 22:1007(J)(2) must be given favor over the general restraint of trade provisions of La.R.S. 51:122, given applicable standards of statutory construction. Reference to the entirety of the applicable statutory construction principle is helpful here as the supreme court has explained:

> This Court has held that "it is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, *if there is a conflict*, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *Burge v. State,* 10–2229 (La.2/11/11), 54 So.3d 1110, 1113. Further, this Court has provided that the latest expression of legislative will is considered controlling and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause. *Pumphrey* [*v. City of New Orleans*, 05-0979 (La. 4/4/06), 925 So.2d 1202]. "The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter." *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.,* 06–0582 (La.11/29/06), 943 So.2d 1037, 1045. Finally, recent statutory enactments support this view. In 2006, the Legislature, by Acts 2006, No. 826, § 3, enacted La. R.S. 24:177, which provides in part: "[t]he legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those articles or statutes, and where the new article or statute is worded differently from the preceding law, the legislature is presumed to have intended to change the law." La. R.S. 24:177(C).

*McLane S., Inc. v. Bridges*, 11-1141, pp. 9-10 (La. 1/24/12), 84 So.3d 479, 485 (emphasis added).

Notably, however, this analysis is dependent on "conflict" between statutes dealing "with the same subject matter." *Id.* There is again no readily apparent conflict between La.R.S. 22:1007(J)(2) and the prohibition on the restraint of trade

11

as provided by La.R.S. 51:122 as advanced by Count II of Plaintiff's petition. The former provision instead plainly expresses the legislature's permissive view of a managed care organization's reciprocal treatment of affiliated members. Title 22 is otherwise silent as to the permissive breadth of such an arrangement, containing no language removing the matter from the ambit of La.R.S. 51:122 *under all circumstances*. In this case, those factual circumstances remain to be developed at a trial on the merits as recognized in *Opelousas IV* when a panel of this court similarly denied Plaintiff's motion for partial summary judgment.

BCBSLA further contends within the first assignment of error that "Plaintiffs also claim that BCBSLA violated La.R.S. 51:122 by including a restriction "in its agreements *that prevents providers from contracting for reimbursement rates with other Blue Plans*." (Emphasis added.) BCBSLA, however, contends that such a restriction does not exist but that it states the opposite. Namely, it points to Paragraph 13.8 of its Provider Agreement with Plaintiff, Opelousas General, which provides:

> 13.8  Non-Exclusive Agreement
>
> This Agreement shall not be construed to be an exclusive agreement between PLAN and MEMBER PROVIDER. Nothing in this Agreement shall be construed to restrict PLAN or MEMBER PROVER from entering into other contracts or agreements to provide health care services to other health care delivery plans, patients, employer groups or other entities.

BCBSLA correctly notes that Plaintiff did not offer evidence to the contrary in opposition to the motion for summary judgment.

BCBSLA's argument, however, does not accurately frame Plaintiff's petition under Count II as it relates to La.R.S. 51:122. BCBSLA *focuses on its own contract with Plaintiff*, submitting its own Louisiana Provider Agreement into evidence.

Although Plaintiff *seeks damages* stemming from its own Provider Agreement, Plaintiff alleges that those damages related to BCBSLA's contractual relations with other entities. Count II provides, in its entirety:

## COUNT II

## VIOLATION OF LA. R.S. 51:122

29.

Plaintiff reiterates and reavers all preceding allegations of this Petition.

30.

By entering into agreements with BCBSA and the other Blue Cross/Blue Shield companies, Louisiana Blue Cross has contracted, conspired and/or combined to restrain trade and commerce in Louisiana, acts which are expressly prohibited by La. R.S. 51:122.

31.

Louisiana Blue Cross's anti-competitive agreements and Schemes precluded other Blue Cross/Blue Shield companies from entering the Louisiana health care market and/or contracting for their own reimbursements rates thereby ensuring that Louisiana Blue Cross would gain an extremely dominant and artificially high market share which could not have been achieved but for the elimination of would be competitors from the Louisiana healthcare market in the state of Louisiana.

32.

Defendant's contracts, combinations and conspiracy in restraint of trade and/or commerce in the state of Louisiana violate La. R.S. 51:122.

BCBSLA's reliance on its Provider Agreement with Plaintiff, alone, cannot satisfy the burden it suggests with regard to Count II. Rather, as explained above, the surrounding factual evidence remains to be developed at a trial on the merits.

This assignment lacks merit.

13

*Assignment of Error 2 – Market Allocation and Monopolization Claims*

BCBSLA next argues that it sought summary judgment on Plaintiff's claims as they relate to market allocation under La.R.S. 51:122 as brought by Claim 2 and monopolization under La.R.S. 51:123. It argued that since both claims are dependent on allegations pertaining to "horizontal" agreements between BCBSLA, the Association, and out-of-state Blue Cross plans, they must be dismissed. BCBSLA suggests, as it did to the trial court, that this court has "expressly determined" that BCBSLA only challenges the "vertical agreement" between BCBSLA and the Plaintiff health care providers.

On this point, BCBSLA references statements from this court in *Opelousas III* and *Opelousas IV*. Specifically, BCBSLA points out that in discussing the motion to strike at issue in *Opelousas III*, the panel explained that "[t]his suit only involves provider agreements with BCBSLA and asserts only monetary claims under Louisiana law." *Opelousas Gen. Hosp. Auth.*, _ So.3d at _. Additionally, in *Opelousas IV*, the panel addressed the exception of non-joinder and remarked that "Plaintiffs are only seeking review of the provider agreements with BCBSLA and money damages under those agreements." *Opelousas Gen. Hosp. Auth.*, 318 So.3d at 267. And, in its discussion of Plaintiff's motion for partial summary judgment under review at that time, the panel reiterated that "[t]he case before us only questions the agreements between the medical providers and the insurer, BCBSLA." *Id.* at 269. BCBSLA finally notes that, given that limited question before the court, the panel explained that "[w]e are prohibited from considering whether the BlueCard Program constituted an illegal horizontal cartel and must limit our analysis to the vertical provider agreements." *Id.* at 269.

BCBSLA argues that when the matter returned to the trial court for its consideration of BCBSLA's own motion for summary judgment, the above quoted statements from *Opelousas III* and *Opelousas IV* were entitled to "conclusive effect." Given such conclusive effect, BCBSLA thus contends that the trial court was required to dismiss those claims under both La.R.S. 51:122 and La.R.S. 51:123 as they related only to "horizontal" agreements between BCBSLA and related entities.

In support of this position, BCBSLA references an excerpt from *Arceneaux v. Amstar Corp.*, 10-2329, p. 14 (La. 7/1/11), 66 So.3d 438, 448 (emphasis added), in which the supreme court discussed the law of the case doctrine as follows:

> The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. *Day v. Campbell–Grosjean Roofing & Sheet Metal Corp.,* 260 La. 325, 256 So.2d 105 (1971).
>
>> The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) *the conclusive effects of appellate rulings at trial on remand*, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.
>
> *Petition of Sewerage and Water Bd. of New Orleans,* 278 So.2d 81, 84 (La.1973). However, even when applicable, the law of the case is discretionary and should not be applied in cases of palpable error or where application would result in injustice. *Id.*

BCBSLA's claim fails on two fronts. First, in both *Opelousas III* and *Opelousas IV*, the panel was discussing the case within the strict confines of the interlocutory rulings presented therein. In *Opelousas IV*, in particular, it is important

to recall that the panel addressed Plaintiff's motion for *partial* summary judgment that did not relate to the entirety of Plaintiff's petition.

BCBSLA correctly observes that Plaintiff's Count II, pertaining to La.R.S. 51:122's prohibition on restraint of trade, and its Count III, pertaining to La.R.S. 51:123's prohibition on monopolization of trade or commerce, involve factual references to the agreements between BCBSLA, the Association, and the counterpart BlueCard entities. BCBSLA's narrow focus on those factual allegations, however, is misleading. Rather, Plaintiff's petition sets forth an overall claim based on the "vertical agreement" between the Plaintiff health care providers and BCBSLA.

Examination of the petition from its "Factual Backgrounds and Allegations" through its prayer for relief reveals the structure of Plaintiff's claim. Plaintiff initially related the existence of the BCBSLA BlueCard program created through the interrelated contracts involving the Association and the corresponding out-of-state entities. It asserted that "[t]hrough various agreements with affiliated Blue Cross/Blue Shield companies and the [Association,] colluded to make Louisiana a distinct "Service Area" and to allocate the Louisiana health insurance market free of competition from any other Blue Cross/Blue Shield company[.]" However, Plaintiff's petition did so only within the context of Plaintiff's own "vertical" agreement with BCBSLA, the agreement by which it is claiming that it has been placed at a disadvantage in the marketplace. Plaintiff specifically alleged that:

> Plaintiff and the Plaintiff Class have been injured in their business or property by reason of the foregoing violations of La.R.S. 51:122 and La.R.S. 51:123 *in that they have been forced or coerced into contracts providing for reimbursement for medical services and/or have been reimbursed for medical services at rates far lower tha[n] they would have been in the absence of Louisiana Blue Cross's restriction of trade and/or monopolization*, and as such are entitled to

16

three fold damages and reasonable attorney fees pursuant to La.R.S. 51:137.

(Emphasis added.) Plaintiff thereafter advanced the factual allegations underlying BCBSLA's participation in the alleged "Scheme," doing so within the context of La.R.S. 51:122 and La.R.S. 51:123, and suggesting that BCBSLA's participation therein violated both statutory provisions.

Subsequently returning to its prayer for damages advanced in Count IV, Plaintiff again plainly alleged that, due to BCBSLA's violations of La.R.S. 51:122 and La.R.S. 51:123, "Plaintiff and Plaintiff Class members have suffered damage to their property and businesses" as they were "reimbursed for healthcare services pursuant to Louisiana Blue Cross contracts at rates far lower than they would have been in the absence of Louisiana Blue Cross's scheme and agreements in restraint of trade and contracts." Plaintiff alleged that it was "also subjected to onerous and less favorable contracted terms with Louisiana Blue Cross as a result of Defendant's monopolistic, overwhelming large market share, and the coercive effect of such unlawful monopoly power wielded by Defendant Louisiana Blue Cross." Given that purported conduct, Plaintiff sought recovery in the form of treble damages as allowed by La.R.S. 51:137.

Plaintiff's petition obviously invokes the factual circumstances surrounding BCBSLA's agreements with the Association and the out-of-state BlueCard entities. It does so, however, within its solitary claim for damages stemming from the allegedly derivative and disadvantageous position it was placed in by its own health care provider contract with BCBSLA. At no time did Plaintiff seek to invalidate the alleged "horizontal" agreements between BCBSLA, the Association and its counterpart out-of-state entities.

17

This assignment lacks merit.

*Assignment of Error 3 – Judicial Admissions*

BCBSLA's narrow focus on the claims surrounding the "horizontal" agreements carries over into its third assignment of error by which it argues that "[i]t should come as no surprise that this Court found that Plaintiffs' claims are limited to challenging provider agreements with BCBSLA: Plaintiffs themselves have represented to multiple courts that they are not seeking any relief relating to BCBSLA or other Blue Plans." It contends that Plaintiff's "concessions" in this regard were strategic in nature so as to avoid a required joinder of the Association and the out-of-state entities which would have required removal to federal court for consolidation with multi-district litigation proceeding in federal court.

As with its argument in Assignment of Error 2, however, BCBSLA's argument ignores Plaintiff's claim for recovery as advanced in its petition. Plaintiff's "strategy" in naming only BCBSLA as a defendant and in not seeking to invalidate the "horizontal" agreements makes its claim a difficult one and delineates a narrow path for it to walk at a trial on the merits. It is, however, of no moment in analyzing BCBSLA's motion for summary judgment.

Instead of admitting, confessing, or changing course in its arguments, reference to the petition indicates that Plaintiff has consistently sought recovery due to the allegedly disadvantageous position it was placed in through its own health care agreement with BCBSLA. Notably, Plaintiff has filed a singular petition in this case and has not named additional defendants, sought recovery from any entity other than BCBSLA, or sought to invalidate any agreement, whether "horizontal" or "vertical." While it remains to be seen whether Plaintiff can satisfy such a nuanced approach to the claim on its own health care provider agreement with BCBSLA, the

18

record does not indicate that Plaintiff has otherwise ceded claims during the course of litigation thus far.

This assignment lacks merit.

*Assignment of Error 4 – Genuine Issue of Material Fact*

In its final assignment of error, BCBSLA questions the trial court's denial of its motion for summary judgment on an evidentiary basis. It contends that its own motion satisfied the procedural requirements of La.Code Civ.P. art. 966 and Louisiana District Court Rule 9.10. It further suggested that its own evidentiary production substantively showed that there were no genuine issues of material fact, yet Plaintiff failed to satisfy Rule 9.10 as it did not respond to BCBSLA's statement of genuinely undisputed facts or include documentary references in opposition to any such disputed facts. It argues that "[i]ndeed, Plaintiffs did not put forth even a single document showing a material dispute for trial."

In this regard, La.Dist.Ct. Rule 9.10 succinctly provides, in part, that:

(b)   A memorandum in opposition to a motion for summary judgment shall contain:

(1)   A list of the material facts that the opponent contends are genuinely disputed; and

(2)   A reference to the document proving that each such fact is genuinely disputed, with the pertinent part designated.

Rule 9.10 anticipates "genuinely disputed" facts. Again, however, BCBSLA's motion for summary judgment is one praying for recovery as a matter of law as it poses questions related to statutory construction, construction of the pleadings, and interpretation of this court's prior rulings. Stated above in the discussion of Assignment of Error 1, La.Code Civ.P. art. 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and

supporting documents show that there is no genuine issue as to material fact *and that the mover is entitled to judgment as a matter of law.*"  (Emphasis added.)

While the parties have vigorously disputed the import of the evidence generated through discovery thus far, each side is entitled to and can best present all relevant evidence bearing upon these important issues at a trial on the merits with a full record then available for appellate review.  We, therefore, affirm the trial court and deny BCBSLA's motion for summary judgment pursuant to La.Code Civ.P. art. 966.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assigned to Defendant/Appellant, Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana.

**AFFIRMED.**